**Einar FUHR, Plaintiff,**

v.

**NEWFOUNDLAND–ST. LAWRENCE SHIPPING LTD., PANAMA, Defendant.**

United States District Court
S. D. New York.
June 1, 1959.

Lebovici & Safir, New York City, for plaintiff (Herbert Lebovici, New York City, of counsel).

Kirlin, Campbell & Keating, New York City, for defendant (W. D. Powers, M. L. Danahar, C. N. Fiddler, New York City, of counsel).

THOMAS F. MURPHY, District Judge.

This is a claim, tried to the court by agreement of counsel, by an alien seaman against a Panamanian steamship company for overtime and statutory extra wages under Panamanian law. Plaintiff's second claim for liquidated damages for failure to pay such wages was tried to a jury who returned a verdict for defendant.

Plaintiff, after trial, argues that both claims are properly in this court because they are bottomed on a federal statute, to wit, 46 U.S.C.A. §§ 596, 597, or on an alternate theory that since the jury tried claim was based on a federal statute the court has pendent jurisdiction of the other claim. In his complaint plaintiff claimed to be a citizen of New York and framed his pleading so as to give apparent diversity jurisdiction to his first claim for extra wages, and for his second claim he relied on 46 U.S.C.A. §§ 596, 597. He demanded a jury trial.

Defendant does not contest jurisdiction but we must satisfy ourselves that we have the power to act. We admit to serious doubt on this score but will nevertheless decide the merits with the hope of avoiding another trial in the event we are in error on the question of jurisdiction.

Plaintiff, a citizen of Norway, and not of New York, signed on the M. V. Mercator at New York as chief mate on May 18, 1953, and served in different capacities aboard her until February 18, 1955, when she sailed without him from Bermuda. The M. V. Mercator was registered under the laws of Panama and was owned by defendant, a Panamanian corporation. It flew the Panamanian flag and was engaged in international traffic.

The ship's articles signed by plaintiff on May 18, 1953, provided for a monthly wage of $270, plus a vacation period at that rate, and for $1 per hour for overtime. While at sea on July 11, 1953, plaintiff and the other members of the crew agreed to eliminate overtime for Sunday and holiday work at sea and each subscribed his name to an agreement to that effect. On February 9, 1954, plaintiff signed a new set of articles as acting master with a salary "as agreed, including vacation pay." These articles embodied the same terms and conditions as the first set of articles. Each set of articles signed by plaintiff was approved by the Panamanian consul, as was the waiver of Sunday and holiday overtime. On March 1, 1954, plaintiff was demoted to second mate at a salary of $240 per month and continued in such capacity until February 18, 1955, when he missed the ship in Bermuda.

During all of the time plaintiff was aboard ship he worked seven days each week and eight hours a day, divided into two watches. He had 12 days vacation of two six-day periods. He received all the money he was entitled to under the articles he signed and the waiver for overtime on Sundays and holidays. He kept detailed records relating to his hours worked and wages due, and admitted that his computations corresponded to the amounts received. He further admitted that each time he signed the payroll the payroll indicated that the wages received were "in full payment of services as indicated." His testimony explaining why he missed the ship in Bermuda left much to be desired. It was clear that he took shore leave after working long hours and, when he returned to the pier at a time he thought the ship would be there, it had left without him. We will assume, with our tongue in cheek, that it was not his fault. In any event he next boarded the ship at Savannah, Georgia, on March 8, 1955, in an attempt to secure his wages from the master but could not locate him. He received his wages from the ship's agents in New York City on March 14, 1955, at which time he signed the account sheet with his name and the phrase, "with reservation."

Plaintiff filed his complaint on April 15, 1957. His second claim, which was tried to a jury, was for liquidated damages pursuant to §§ 596, 597 of 46 U.S. C.A. Those sections permit seamen, including alien seamen, to sue for double wages for the period their wages are wrongfully withheld by the steamship owner. The jury was instructed to assume plaintiff was entitled, pursuant to Panamanian law, to extra wages over and above what he was paid and to resolve only the question whether defendant, without sufficient cause, refused to pay him and, if it did, to fix the amount of liquidated damages. The jury, as stated above, found for defendant.

■ We were doubtful at the time of the trial whether the court had jurisdiction but on the assumption that it did we permitted the jury to resolve the issue of fact. We were doubtful on two grounds, (1) because there was no proof that the M. V. Mercator was in any United States harbor—in fact there was no proof where the ship was at the time suit was commenced or during its pendency, and (2) because this was not a proceeding in admiralty but an action at law. As we read the statute and reported cases discussing jurisdiction it would seem that the court lacks jurisdiction for claims under §§ 596 and 597 unless the ship is in a United States harbor and, perhaps for venue purposes, within the district at the time suit was started, or at least during its pendency. In Transportes Maritimos Do Estado v. Almeido, 2 Cir., 1925, 5 F.2d 151, 153, Judge Hough said:

"This is a wage claim—it can be nothing else for purposes of jurisdiction. As a suit upon a broken Portuguese contract instituted by one alien against another, it has no place on the docket of the District Court. But as a wage claim it belongs to a class of demands which can only be promoted by seamen on foreign vessels while their vessel is in a harbor of the United States.

"For this reason the judgment is reversed and the cause remanded, with directions to dismiss the complaint."

Cf. The Strathlorne, D.C.Or.1926, 15 F. 2d 210; Stavridis v. Cia Panamena Europa Navegacion, D.C.S.D.N.Y.1950, 90 F.Supp. 187.

If the court was without jurisdiction on plaintiff's federal statutory claim his other claim, involving additional wages due under the Panamanian law, said to be pendent on the other, would seem to be just floating in thin air. We cannot, therefore, dispose of it on the theory that once having jurisdiction we should resolve the other claims to do substantial justice. The fulcrum has disappeared.

Not being pendent to anything and diversity being absent, the only other possible justification for jurisdiction would be that it is in reality a proceeding in admiralty but incorrectly "labelled." But neither at trial nor after has plaintiff suggested this, and his counsel is a most experienced and competent lawyer in this type of litigation. Perhaps the reason is that he is not suing on a marine contract but rather for penalties under a Panamanian Fair Labor statute and the admiralty would not have jurisdiction. We need not resolve this thorny problem since we have stated that we would proceed to the merits in any event.

In his second claim plaintiff seeks (a) 1½ days vacation per month of service; (b) overtime pay at the rate of time-and-a-half for each Sunday and national holiday worked by him; (c) overtime pay at the rate of time-and-a-quarter for hours worked in excess of 45 hours each week, excluding Sundays and holidays, and (d) overtime at the rate of time-and-a-quarter for eight hours each week representing a day's rest plaintiff should have had but did not, since he was required to work seven days a week. From the total, allowance is to be made for the wages actually received.

Plaintiff's claim is based on the Panamanian Labor Code and Law No. 7 of

**12**

1950 of the National Assembly of Panama. Article 149 of the Panamanian Labor Code reads in pertinent part as follows:

"The provisions of this code apply to relations between employers and workers aboard ships engaged in the coastwise service as well as seamen aboard ships engaged in international traffic.

"Seamen are considered to be any person or persons rendering service aboard ship in any capacity, *excepting*:

"(1) The captain or master.

"(2) The pilot.

"(3) *The officers.*

\*   \*   \*   \*   \*   \*

"Relations between employers and workers aboard ships engaged in international traffic which are not regulated by this Code, shall be governed by the provisions of the Commercial Code, even should these vessels occasionally engage in the coastwise service." (Emphasis supplied.) ·

■ Since plaintiff was an officer aboard a vessel engaged in international traffic he comes clearly within the exceptions above quoted and, therefore, the provisions of the Labor Code are inapplicable. His argument that Article 149 does not really mean what it says is captious, nor would we have the temerity or the power to declare the article unconstitutional.

■ We feel, however, that Law No. 7 of 1950 is applicable since it expressly relates to Panamanian vessels engaged in international trade and specifically includes officers. Article 1 of that law provides for vacations of 18 days for each 12 months' service for captains and officers. Article 6 provides that each and every member of the crew whose period of effective work exceeds the legal limits shall have the right to be paid overtime with a surcharge of not less than 25% over the wages that he earns. We conclude, therefore, that plaintiff would *or-*

*dinarily* be entitled by virtue of Law No. 7 to paid vacations of 1½ days per month of work, and to overtime at the rate of time-and-a-quarter for all work in excess of the maximum hours per week. Since plaintiff worked two watches per day of four hours each, one in the A.M. and one in the P.M., he falls between the Panama constitutional maximum (Article 69) of eight hours a day and seven hours at night and, therefore, the maximum work day for overtime purposes should be 7½ hours, or 45 hours per week. We find, too, that although he waived his rights to overtime for Sundays and holidays at sea such waiver was a nullity within the meaning of article 70 of the Panamanian Constitution.

Although plaintiff would ordinarily be entitled to the recovery indicated we hold that the action is time-barred.

Since Article 149 of the Panamanian Labor Code, quoted above, relegates people such as plaintiff to the Commercial Code, Article 1651 of that code becomes important, for it fixes a one-year time limitation from the day of separation for actions to collect wages by a captain and the crew. Whether such time limitation is procedural or substantive is always a perplexing question, but we feel that it meets the specificity test resorted to by the Court of Appeals in Bournias v. Atlantic Maritime Co., 2 Cir., 1955, 220 F. 2d 152, wherein the court construed the statute of limitations in the Panamanian Labor Code. Accordingly this action, brought more than one year after it accrued, is barred.

We reject plaintiff's argument to the effect that since Law No. 7 amends certain sections of the Panamanian Labor Code and repeals others the intent of the Panama National Assembly was to make the entire Labor Code applicable to such as plaintiff. Article 12 of Law No. 7 specifically makes it applicable only to Panamanian vessels engaged in international trade and specifically enumerates the articles of the Labor Code which are amended or repealed, and nowhere is

Article 149 mentioned. From this we are compelled to conclude that the Panama Assembly had no intention of modifying or repealing Article 149.

Finally there remains a question of practice, resolution of which was left undetermined at the trial. Plaintiff, long before trial, served a very extensive notice to admit. To a large degree it asked that defendant admit or deny that certain quoted excerpts were correct translations of the Panamanian law. Defendant admitted they were. We are principally concerned with only two requests for admissions, reading as follows:

"(24) That the use of the word 'Code' [in] * * * Article 149 of the * * * Labor Code of the Republic of Panama * * * is in error * * * and that the National Assembly * * * intended * * 'Title' * * *.

"(33) That at all times herein, the Labor Code of the Republic of Panama * * * was applicable to all the officers serving on vessels flying the flag of the Republic of Panama * * *."

In defendant's response (No. 5) it stated that the above items "call for opinions and interpretations of foreign law and defendant is not required to admit or deny such matters." That, defendant says, is a setting forth of its reasons why it cannot admit or deny the requests, pursuant to Rule 36(a), Fed.R. Civ.P. 28 U.S.C.A.

Item (24) asks defendant to admit that the Panamanian Assembly in enacting Article 149 used the word "Code" when it meant "Title." It might be that defendant could agree or disagree with plaintiff's thesis, but it would seem that if one is to admit or deny it should be as to matters within the knowledge of the party to whom the request is made or reasonable ascertainable. We do not construe this request to partake of that nature.

Item (33) asks defendant to admit that plaintiff is covered by the Labor Code notwithstanding the unambiguous language to the contrary contained in that Code. Furthermore, this issue is the main question in dispute.

Rule 36 was designed to obtain admissions of facts as to which there is no real dispute. 4 Moore, Federal Practice, ¶ 36.02, at 2705 (2d ed. 1950). It was not for the purpose of proving the entire case. Demmert v. Demmert, D.C.D. Alaska 1953, 115 F.Supp. 430, 433. Requests calling for the expression of opinions of the opposing attorney or party, or the interpretation or applicability of foreign law to the particular facts appear not to be within the purview of the rule. Cf. Moumdjis v. S. S. The Ionian Trader, D.C.E.D.Va.1957, 157 F.Supp. 319.

Where, as here, clearly improper requests are made, defendant's proper course was to file objections on motion in accordance with the rule. Refusal to admit without detailed reasons why the responder cannot truthfully admit or deny is the equivalent of an admission. Jackson v. Kotzebue Oil Sales, D.C.D. Alaska 1955, 17 F.R.D. 204, 206. Without considering whether defendant's responses may be construed as detailed reasons why it could not admit or deny, we feel that in a case such as this, where plaintiff has sought to gain admissions of the vitally disputed questions in the case, and which deal not with facts reasonably ascertainable, but on the contrary involve opinions and interpretations which prima facie are untenable, the court will not encourage such a practice by ascribing to defendant a technical default. This conclusion is doubly justified where as here the facts found by the court are not supported by the alleged admissions.

This opinion is filed in lieu of findings of fact and conclusions of law.

Complaint dismissed and judgment for defendant.