**THE FLETERO et al. v. ARIAS.**

**No. 6607.**

United States Court of Appeals, Fourth Circuit.

Argued June 19, 1953.

Decided July 31, 1953.

---

Hugh S. Meredith, Norfolk, Va. (Vandeventer, Black & Meredith, Norfolk, Va., on the brief), for appellants.

Henry E. Howell, Jr., and H. Lee Kanter, Norfolk, Va. (Kanter & Kanter and Jett, Sykes & Howell, Norfolk, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a suit in admiralty filed by an Argentine seaman, Hugo Arias, against the Argentine vessel Fletero and its owner the Argentine Corporation Compania Argentina de Navegacion Dodero, to recover damages on account of personal injuries sustained by Arias while the vessel was tied up at the dock at the port of Norfolk, Va., together with a balance due on wages. The original libel asked recovery against the vessel and owner on the ground that libellant's injuries were caused by the unseaworthiness of the vessel. An amendment to the libel alleged negligence on the part of the owner and asked recovery under the Jones Act, 46 U.S.C.A. § 688. A second amended libel alleged failure to pay libellant a balance on wages due him at the time of his discharge from the vessel at Norfolk and asked recovery of this balance with "waiting time" under the statute. Prior to the hearing, the vessel tendered to libellant in open court the sum of $1,304.71 in payment of the wage and overtime claim. The District Judge held that respondents were liable for libellant's injuries "both because of the unseaworthiness of the vessel and for the negligence of the respondent's winch operator", invoking for the latter ground the provisions of the Jones Act. He awarded libellant the sum of $20,000 on account of his injuries and gave a decree for this amount plus the $1,304.71 tendered on the wage claim.

The first question presented by the appeal is whether there was error on the part of the District Judge in taking jurisdiction of the case. In the District Court there was a motion to dismiss on the ground that the vessel belonged to the Argentine government; but the motion was denied on the ground that the vessel was being operated in commercial trade by the corporation named as the owner in the libel.

The point raised by this motion is not urged on appeal. Appellants contend, however, that the District Judge retained jurisdiction because he was erroneously of opinion that, under the decisions in this Circuit, he had no discretion in the matter. Appellants are the ones who are in error as to this. The District Judge in his memorandum of November 26, 1952, in which he passed on the question of liability, distinctly stated that the court had *"exercised its discretion to accept jurisdiction* of the alien's claim here, in accordance with the doctrine of this Circuit". (Italics supplied). In the same memorandum he referred to two decisions of this court which lay down, not only the doctrine of this Circuit, but what we understand to be the law as laid down by the Supreme Court with respect to the exercise of discretion in accepting jurisdiction of a suit by a foreign seaman. That doctrine as stated by us in Heredia v. Davies, 4 Cir., 12 F. 2d 500, is as follows:

"Respondent's first contention is that, as libelant was a citizen of Peru and was injured while in the performance of his duties on a Peruvian ship, the courts of the United States are without jurisdiction to entertain the libel. With this contention we cannot agree. In the absence of treaty stipulation, the courts of admiralty of the United States have jurisdiction of all matters appertaining to a foreign ship while in the ports of this country. The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152; The Roxen, 4 Cir., 11 F.2d 55, decided January 14, 1926; Elder Dempster Shipping Co. v. Pouppirt, 4 Cir., 125 F. 732; Cunard S. S. Co. v. Smith, 2 Cir., 255 F. 846; The Ester, D.C., 190 F. 216.

"While an admiralty court of the United States is under no obligation to entertain jurisdiction of a libel to recover for personal injuries, where libelant is a foreigner and the ship is a foreign ship, it is inclined to do so when (as in this case) it is necessary to prevent a failure of justice, or when the rights of the parties would

be thereby best promoted. Cunard Steamship Co. v. Smith, supra. And when in such case the District Court exercises its discretion in favor of assuming jurisdiction, this discretion will not be reviewed on appeal, in the absence of showing that it was exercised on wrong principles, or that the District Judge has acted 'so absolutely differently from the view which the court of appeal holds that they are justified in saying he has exercised it wrongly.'"

■ We *cannot say that there was any* abuse of discretion on the part of the lower court in taking and holding jurisdiction of this case. The injury occurred while the ship was tied up in the dock at Norfolk and the injured seaman was in a Norfolk hospital. A survey of the vessel had been made in Norfolk and the survey and other proofs were available there to establish libellant's cause of action. The injured seaman had been discharged from the vessel without payment of a considerable balance of wages due him; and counsel whom he had employed lived in Norfolk and by their diligence had prepared the case so as to establish his right to recover substantial damages. There is nothing in law or in sound common sense which requires that, in this posture of affairs, the court throw libellant out of court and tell him to start over again in a distant jurisdiction, where counsel who had prepared his case could not appear for him, and where the proofs necessary to establish liability might not be obtainable. Particularly is this true when to dismiss the case here would require libellant to pursue his rights in the courts of a foreign government which was seeking to defeat his recovery by moving for a dismissal of his case here on the ground that that government was the owner of the ship. To throw libellant out of court now would be to subject him to the grave danger of having the Argentine courts hold that his cause of action is barred by its one year statute of limitations. These seem to us to be persuasive arguments for the exercise of the discretionary jurisdiction vested in the

court below. See Lauritzen v. Larsen, 345 U.S. 571 at pages 589–590, 73 S.Ct. 921 at page 932.[1] At all events, we cannot say that, with these considerations before him, there was abuse of discretion on the part of the District Judge in taking and holding jurisdiction of the case, even if it had involved nothing more than the claim for damages for personal injuries.

■ It may not be overlooked, however, that under the second amended libel the case involved a claim for wages and waiting time under a statute of the United States, 46 U.S.C.A. § 596, which requires that upon discharge of a seaman in a port of the United States his full wages be paid him and imposes a penalty of double wages for delay in payment. This section applies to foreign seamen serving on a foreign vessel. Strathearn S. S. Co. v. Dillon, 252 U. S. 348, 40 S.Ct. 350, 64 L.Ed. 607; The Sonderburg, D.C., 40 F.2d 652, affirmed, 4 Cir., 47 F.2d 723, certiorari denied. 284 U.S. 618, 52 S.Ct. 7, 76 L.Ed. 527. There is no blinking the fact that libellant's wages were not paid him at the time when, as found by the court below, he was discharged from the vessel, nor was the balance due ever tendered him until more than six months after his discharge and after the filing of the amended libel, when appellants tendered him the balance due on wages with penalties, amounting in all to $1,304.71. Decree was given libellant for the amount so tendered and appellants are contesting on this appeal the amount included in the decree for the penalties. There can be no question but that the court should have taken jurisdiction of a cause of action of this sort arising under the statutes of this country. Elman v. Moller, 4 Cir., 11 F.2d 55; Heros v. Cockinos, 4 Cir., 177 F.2d 570, 572. The fact that the court must assume jurisdiction of the claim arising under the statutes of the United States is a circumstance which it may properly consider in deciding whether it will assume jurisdiction of the claim for damages so that the libellant may be awarded complete relief against the vessel in one suit.

■ The facts out of which the claim for damages for personal injury arise are as follows: The vessel had completed loading a cargo of coal at Norfolk and seamen were engaged in putting the hatch cover on No. 2 hatch. Libellant Arias was engaged in removing coal from the hatch channel when a hatch cover weighing about a ton was dropped upon him in such way as to crush his right hand and forearm so that they had to be amputated. The District Judge found, and his finding is amply supported by the evidence, that the dropping of the hatch cover upon plaintiff's arm was due to the defective condition of the brakes of the winches by which it was being handled. The manner of the occurrence is thus described in the findings of fact made by the District Judge:

"After the sling had been rigged (by the libellant and others) to lift the topmost of the said hatch sections, it was ascertained that the starboard winch cable was kinked, which condition prevented proper operation of the starboard winch. Accordingly, certain crew members, including Hugo Causson, pulled the starboard cable from off the winch to straighten out the kinks; whereupon, Aurelio Navone engaged the starboard winch so as to rewind the cable on the drum of the winch. The end of this cable was made fast to a shackle which in turn was made fast to the port cable, and ultimately to the sling. While the cable was being rewound on the starboard drum, the starboard drum suddenly picked up speed and caused the the starboard cable to become taut and drag the top hatch section from the

---

1. In this case, in which it was held that a foreign seaman might not maintain a suit under the Jones Act for a maritime tort committed on a foreign ship in a foreign port, the court said: "It is argued, and particularly stressed by an amicus brief, that justice requires adjudication under American law to save seamen expense and loss of time in returning to a foreign forum. This might be a persuasive argument for exercising a discretionary jurisdiction to adjudge a controversy; but it is not persuasive as to the law by which it shall be judged."

pile on the port side. Crew members stationed on the starboard side of No. 2 hatch observed the hatch section as it was being dragged from the pile and gave an alarm, whereupon libellant immediately threw himself flat on the deck against the port coaming. The winch operator, Navone, immediately engaged the automatic brake to the starboard winch by moving the lever to a neutral position. The brake to the port winch was engaged by reason of the winch not being in operation. The hatch section swung on the cable across the deck and struck the port side of the hatch coaming and there hung for a moment, at which time the winch brakes slipped, because of their defective condition, and allowed the steel hatch section to fall upon the libellant's right arm as he laid upon the deck. The function of the foot brake on the starboard winch, in addition to being used for emergency purposes, was designed to control the speed of the winch when being used to rewind cable, as was being done at the time of the instant accident. In view of the unseaworthiness of the said foot brake, the winch operator, Navone, was unable to prevent a sudden acceleration or speedup of the drum which on this occasion caused the top hatch cover to be dragged from the sections stacked against the port bulwark in the manner heretofore described."

And with respect to the defective condition of the brakes responsible for the occurrence, the judge made the following finding, which is amply supported by the evidence, viz.:

"On October 15, 1951, at the time here involved, the automatic brake of either or both the port and starboard winches, and the foot brake on the starboard winch at No. 2 hatch were defective, inadequate, out of repair and unseaworthy. The foot brake to the Starboard winches at No. 2 hatch would not control the drum because of its said condition. The automatic brakes would not effect a proper hold-ing upon their engagement, and because they were defective, inadequate, out of repair and unseaworthy, it permitted the weight of the hatch section, hereafter referred to, to drop and fall upon the libellant."

The judge held that the proximate cause of the accident was "the unseaworthiness of the automatic brake appurtenant to the port and starboard winches, and of the foot brake to the starboard winch at No. 2 hatch of the Steamship Fletero." He held also that the negligence of the winch operator "also proximately concurred in causing and efficiently contributing to the said accident"; and in this connection he made the following finding:

"The winch operator, Navone, failed to engage the lever to the port winch, which was within a hand's grasp of his position between the control boxes to the port and starboard winch, so as to lift the hatch section before it fell upon the libellant; however, if the brakes had been in proper working condition the hatch section would not have fallen upon the libellant, notwithstanding the said failure of the winch operator."

In holding appellants liable for libellant's injuries, the trial judge said in his memorandum:

"Respondents will be held liable for Arias' injuries, both because of the unseaworthiness of the vessel and for the negligence of the respondents' winch operator. For the latter ground the court invokes the provisions of the Jones Act, 46 U.S.C.A. § 688."

In view of what was said by the Supreme Court in the recent case of Lauritzen v. Larsen, supra [345 U.S. 571, 73 S. Ct. 929], there is considerable doubt as to whether liability could be asserted under the Jones Act. The burden of that decision is that the law of the sea is in a peculiar sense an international law under which one sovereign power is bound to respect the rights of other sovereign powers and hence a remedy provided by our law but unknown to the law of the flag of a foreign ship should not be too hastily applied in an action against her or her own-

ers. It is true that in that case the attempt was to apply the Jones Act in the case of an injury sustained in a foreign port by a foreign seaman in a foreign ship and that the court expressly refused to consider whether the law of the port could be applied in determining liability, saying, "The locality test * * * affords no support for the application of American law in the case and probably refers us to Danish in preference to Cuban law, though this point we need not decide, for neither party urges Cuban law as controlling". In that case Danish law was the law of the flag and Cuban law the law of the port. The court went on to quote with approval, however, the following passage from United States v. Flores, 289 U.S. 137, 158, 53 S.Ct. 580, 77 L.Ed. 1086, iterated in Cunard S. S. Co. v. Mellon, 262 U.S. 100, 123, 43 S.Ct. 504, 67 L.Ed. 894, viz.:

"'And so by comity it came to be generally understood among civilized nations that all matters of discipline, and all things done on board, which affected only the vessel, or those belonging to her, and did not involve the peace or dignity of the country, or the tranquility of the port, should be left by the local government to be dealt with by the authorities of the nation to which the vessel belonged as the laws of that nation, or the interests of its commerce should require.'"

While this language was used with reference to applying the law of the flag as against the Jones Act, which was merely the law of the forum, in determining the liability of a foreign vessel in a foreign port, we should hesitate, in the light of what was said, to apply that statute in determining the liability of a foreign vessel in an American port with respect to "'things done on board, which affected only the vessel, or those belonging to her'".

We need not decide the point, however, for the liability of the vessel and her owners was expressly based, and properly based, by the court below on the unseaworthiness of the vessel resulting from the defective condition of the brakes of the winches, as well as upon the negli-

gence of the winch operator, and the liability can be sustained under the law of the Argentine upon the ground of unseaworthiness alone without reference to the Jones Act. The court found, as heretofore quoted, that if the brakes had been in proper condition the hatch section would not have fallen upon the libellant, notwithstanding the negligence of the winch operator. It is settled that, where injury is due to the unseaworthy condition of a vessel, the concurring negligence of a seaman becomes immaterial. Mahnich v. Southern S. S. Co., 321 U.S. 96, 94 S.Ct. 455, 88 L.Ed. 561; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 93-94, 66 S.Ct. 872, 90 L.Ed. 1099. And even though liability on account of unseaworthiness be determined by the law of the Argentine, as the law of the flag, instead of by our law, as the law of the place where the injury occurred, there is no difference between that law and our law as to the liability arising out of unseaworthiness. In both countries it is the general maritime law which applies. In the brief of appellants it is said: " * * * it is clear that the libellant has certainly equal, if not more adequate remedies under the Argentine law than he does under the United States law."

It is argued that under the law of the Argentine, as established by the evidence in this case, a seaman injured as a result of the unseaworthiness of the vessel may recover under the Workmen's Compensation Act, where the limit of the award is 6,000 pesos, or around $400; but it is also established that under Argentine law he may recover under the civil code, where he must prove negligence on the part of the owner or unseaworthiness of the vessel but can recover the full amount of his damage. Before he can go into the Argentine courts with a suit for damages under the civil code, however, it is obligatory that he proceed under the workmen's compensation act; but, if not satisfied with the award there obtained, he may sue in the courts under the civil code. This suit is an independent suit, not an appeal from the Workmen's Compensation Board, and the determination of the Board theretofore made has no binding effect in the suit. In

other words, the law of the Argentine merely requires that, before resorting to its courts, an injured seaman claiming damages because of the unseaworthiness of the vessel or the negligence of the owner must first exhaust the administrative remedy provided by the Workmen's Compensation Act; this, however, is a mere matter of procedure, as to which the law of the forum and not that of the foreign nation governs. Heredia v. Davies, supra, 4 Cir., 12 F.2d 500, 501; Pritchard v. Norton, 106 U.S. 124, 129, 1 S.Ct. 102, 27 L.Ed. 104; Minor on Conflict of Laws, par. 205 et seq.; A.L.I. Restatement Conflict of Laws secs. 584, 585. If the Workmen's Compensation Act provided the exclusive remedy of the injured seaman under Argentine law, as was the case of the Danish law involved in Lauritzen v. Larsen, supra, a different question would be presented.

 With respect to that portion of the decree which granted recovery for the balance due on wages with waiting time under the statute, appellants contest the allowance of waiting time on the ground that there was never any controversy as to wages. The fact remains, however, that at the time plaintiff was injured he was formally discharged from the ship and, although he was left in the hospital, only $20 of the $125 balance due him was paid. A controversy as to the balance due, if reasonable, might have justified the failure to pay and thus have avoided the penalty. Collie v. Fergusson, 281 U.S. 52, 50 S.Ct. 189, 74 L.Ed. 606. As there was no controversy as to the balance and no reasonable excuse[2] for not paying it, there was no reason why recovery should not be allowed for the 201 days delay, since the penalty of double wages is given against the master or owner who "neglects" to pay the wages due at the time of discharge as well as against the one who refuses. 46 U.S.C.A. § 596. Decree was entered only for the amount tendered by appellants on May 9, which was tendered unconditionally and stopped the running of the "waiting time" as of the date of the tender. A conditional tender would not have had this effect. Mandelin v. Kenneally, 4 Cir., 11 F.2d 344. We find no error in entering judgment for the amount thus tendered.

For the reasons stated the decree of the District Court will be affirmed.

Affirmed.

2. It is suggested that the vessel was paying for the care of libellant in the hospital, but this did not excuse the failure to pay him the balance of his wages, since it was liable for maintenance and cure under the Argentine law, as well as for wages.