John MONTEIRO, Libelant-Appellant,

v.

SOCIEDAD MARITIMA SAN NICOLAS, S.A. and THE S.S. EURYVIADES, her engines, boilers, tackle, appurtenances, etc., Respondents-Appellees.

No. 312, Docket 25978.

United States Court of Appeals Second Circuit.

Argued May 10, 1960.

Decided June 29, 1960.

Isaac Salem, New York City (Lebovici & Safir, New York City, on the brief), for libelant-appellant.

Donald F. Mooney, New York City (Cardillo & Smith, New York City, on the brief), for respondent-appellee.

Before CLARK, MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Libelant is a Portuguese seaman. Respondent, a Panamanian corporation, owns the S.S. Euryviades, a freighter flying the Liberian flag. Libelant shipped on her at Baltimore in April, 1952 as a fireman; he continued to be employed on the Euryviades until September, 1956. He was then discharged at Galveston and, respondent claims, signed a paper acknowledging that he had "received all moneys and wages due me from this vessel" and that "my sole reason for leaving the ship is to visit relatives in this country." Monteiro does not deny the receipt of all regular monthly wages. By this libel, brought in October, 1956, in the Southern District of New York, he seeks to recover additional sums claimed to have been due at the time of his discharge. The case was previously before us, 2 Cir., 1958, 254 F.2d 514, on an appeal from an order quashing the service of process. We held that a hearing was necessary to determine certain issues of fact, and reversed and remanded to that end. Thereafter respondent appeared generally.

The libel as filed asserted two causes of action, one for $4,130.44 of vacation and overtime pay alleged to be owing under the Panamanian Labor Code, and the other for $3,024 of penalty wages claimed to be due under 46 U.S.C.A. § 596. Respondent's exceptions challenged the applicability of Panamanian law. Correctly anticipating, on the basis of Judge Bicks' opinion in Evangelinos v. Andreavapor CIA, NAV, S.A., D.C.S.D. N.Y.1958, 162 F.Supp. 520 our decision, Grivas v. Alianza Compania Armadora, S.A., 2 Cir., 1960, 276 F.2d 822, that Panamanian law was inapplicable under circumstances such as here alleged, libelant cross-moved for leave to amend. The proposed amended libel asserted three causes of action. The first repleaded the claim for vacation and overtime pay under Panamanian law, with variations from the original theme which we deem immaterial. The second set forth a claim for overtime pay of $3,510.54 under § 51 of the Labor Law of Liberia which we quote in the margin.[1] The third cause of action asserted a claim for penalty wages under 46 U.S.C.A. § 596. The district judge entered an order sustaining the exceptions to the libel, denying the cross motion for leave to amend and dismissing the libel without leave to plead over, 175 F.Supp. 1. From this order libelant appeals.

■ For reasons stated in Grivas v. Alianza Compania Armadora, supra, the district court was right in dismissing the original libel and in denying leave to plead the first cause of action in the proposed amended libel. However, unlike Grivas, where libelants had neither pleaded nor proved the Liberian law, 276 F.2d at page 826, here the second cause of action in the proposed amended libel alleged a provision of Liberian law on its face entitling libelant to overtime pay which he claims not to have received. Our further discussion will relate solely to this second cause of action and the related claim for penalty wages under 46 U.S.C.A. § 596.

■ The district court based the denial of leave to amend in part upon the ground, 175 F.Supp. 3, that a seaman's claim for compensation which is derived solely from a foreign statute applying to workmen generally is not an "admiralty or maritime" claim; hence the court was

---

1. "§ 51. Overtime defined: time and one-half required: Except as otherwise provided in this chapter, no employer shall employ any workman for a work-week longer than forty-eight hours un-less such workman received payment for each hour worked in excess of forty-eight at the rate of one and one-half times the hourly rate at which he is employed."

without jurisdiction under 28 U.S.C. § 1333, and no other basis of federal jurisdiction existed. The court was mistaken in ruling that the claim was not maritime. The critical consideration is the claim's relationship to the sea, see The Poznan, D.C.S.D.N.Y.1921, 276 F. 418, 433, not whether it arises under unwritten or—subject only to the principle of Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086—written law. We have previously taken cognizance of seamen's wage claims based solely on foreign statutes, see, e. g., Bournias v. Atlantic Maritime Co., 2 ·Cir., 1954, 220 F.2d 152; Rodriguez v. Gerontas Compania, 2 Cir., 1958, 256 F. ·2d 582, affirming D.C.S.D.N.Y.1957, 150 F.Supp. 715, 720. If jurisdiction in admiralty was not there discussed, this was ·doubtless because the rule of La Bourgogne, 1908, 210 U.S. 95, 138, 28 S.Ct. 664, 52 L.Ed. 973, that admiralty will take jurisdiction over tort claims arising from foreign statutes, was thought to make it unnecessary to discuss the similar problem in wage cases. See also the Supreme Court decisions with respect to state death acts, of which Hess v. United States, 1960, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 and Goett v. Union Carbide Corp., 1960, 361 U.S. 340, 80 S.Ct. 357, 4 L.Ed.2d 341, are the latest.

An alternative basis for the denial of leave to amend was that the court might decline jurisdiction because of the availability of another remedy. Article X of the Convention Between the United States and Liberia Respecting Consular Officers, 54 Stat. 1756 (1939), provides:

"A consular officer shall have exclusive jurisdiction over controversies arising out of the internal order of private vessels of his country, .and shall alone exercise jurisdiction in cases, wherever arising, between ·officers and crews, pertaining to the ·enforcement of discipline on board, provided the vessel and the persons ·charged with wrongdoing shall have entered a port within his consular district. Such an officer shall also have jurisdiction over issues concerning the adjustment of wages and the execution of contracts relating thereto provided, however, that such jurisdiction shall not exclude the jurisdiction conferred on local authorities under existing or future laws."

Respondent submitted a certificate of the acting Liberian Consul General in New York that the consul was willing to investigate and determine libelant's claim "whenever the parties concerned appear at the Consulate General with all pertinent documents and facts at its disposal for said investigation."

Before stating why we must disagree with the court's conclusion, it will be convenient to deal with respondent's contention that Article X of the Convention barred the court from taking jurisdiction and libelant's contention that Article X gave the Liberian Consul in New York no jurisdiction to hear his claim.

Respondent's contention, based on the "exclusive jurisdiction" phrase in the first sentence of Article X, is readily answered by the words themselves. The "exclusive jurisdiction" of the consular officer relates to "controversies arising out of the internal order of private vessels of his country"; these are described as "cases, wherever arising, * * * pertaining to the enforcement of discipline on board." See, e. g., Korthinos v. Niarchos, 4 Cir., 175 F.2d 730, 732, certiorari denied 1949, 338 U.S. 894, 70 S.Ct. 241, 94 L.Ed. 550. This is not such a case. The consular jurisdiction "over issues concerning the adjustment of wages," provided in the second sentence, not only does not have words of exclusivity but is subject to an express proviso "that such jurisdiction shall not exclude the jurisdiction conferred on local authorities under existing or future laws." If words so clear required commentary, this could be found in the contrast between the language of Article X of the Liberian Convention and similar provisions in other treaties, which, like it, are subsequent to the Seamen's Act of 1915, c. 153, 38 Stat. 1164, e. g., art. XXII of the Treaty of June 5, 1928 with Norway, 47

Stat. 2152, and the language in earlier treaties, e. g., art. XIII of the Treaty of July 4, 1827 with Norway and Sweden, 8 Stat. 346, which was continued in art. XI of the Convention of June 1, 1910 with Sweden, 37 Stat. 1485, giving the consul exclusive jurisdiction in wage matters. Libelant's claim, that the consul in New York lacked jurisdiction because libelant was discharged in Galveston, likewise defies the language. The restriction to the consular officer whose district includes the port that the vessel entered is in the first sentence, granting exclusive jurisdiction over controversies arising out of the internal order of the vessel; the phrase "Such an officer" in the second sentence refers back to "A consular officer" in the first sentence and not to the proviso. Libelant thus had a concurrent but not exclusive remedy before the Liberian consul in New York, and the question requiring decision is whether the district judge could properly remit him to it.

■ In the absence of statute we would unhesitatingly agree with the judge's conclusions that an overburdened district court ought not be required to devote its time to controversies between foreigners who have another convenient forum, see Conte v. Flota Mercante del Estado, 2 Cir., 1960, 277 F.2d 664, and that the circumstances here, namely, that libelant had received his entire basic wage, that the suit comes to trial nearly three years after his discharge in a district many hundred miles distant, and that a consul of the vessel's flag is ready to hear libelant, would justify the court in declining jurisdiction. However, the hypothesis is an unreal one; for here, in contrast to personal injury claims, there are relevant statutes, and we must determine the issue in the light of them.

The statutes are 46 U.S.C.A. §§ 596 and 597. Section 596 requires the master or owner of any vessel to pay a seaman on vessels making foreign voyages his wages within twenty-four hours after the cargo has been discharged or four days after the seaman has been discharged, whichever first happens. It further

provides that every master or owner who refuses or neglects to make such payment "without sufficient cause" shall pay the seaman a sum equal to two days' pay for each day during which payment is delayed, "which sum shall be recoverable as wages in any claim made before the court." Section 597 provides that "Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the balance of his wages earned and remaining unpaid at the time when such demand is made at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended, and all stipulations in the contract to the contrary shall be void * * * And when the voyage is ended every such seaman shall be entitled to the remainder of the wages which shall be then due him, as provided in section 596 of this title." The crucial clause is a proviso "That this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement."

Section 597 represents an amendment of Revised Statutes § 4530, by § 4 of the Seamen's Act of 1915, 38 Stat. 1165, as further amended by § 31 of the Act of June 5, 1920, 41 Stat. 1006. Strathearn S.S. Co. v. Dillon, 1920, 252 U.S. 348, 40 S.Ct. 350, 64 L.Ed. 607 held that § 4 of the Seamen's Act was applicable to foreign seamen despite contrary stipulations in the shipping articles and sustained the constitutionality of the statute as so applied. Although it might have been argued that the foreign vessel proviso referred only to the part payment at each port directed by § 597 and not also to the incorporation by reference of the mandate of § 596 as to wages and penalty wages, the contrary was determined in The Sonderborg, 4 Cir., 47 F.2d 723, 726–727, certiorari denied Akties Dampskibsselskabet Donneborg v. Mikkelsen, 1931, 284 U.S. 618, 52 S.Ct. 7, 76 L.Ed. 527, and the view there taken has been followed in Glandzis v. Callinicos, 2

Cir., 1944, 140 F.2d 111; Venides v. United Greek Shipowners Corp., 2 Cir., 1945, 168 F.2d 681; Mavromatis v. United Greek Shipowners Corp., 1 Cir., 1949, 179 F.2d 310; The Fletero v. Arias, 4 Cir., 206 F.2d 267, certiorari denied 1953, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398, and other cases. Admittedly §§ 596 and 597 apply only to "wages." However, we find no persuasiveness in respondent's argument that payments for overtime are not "wages"; they seem to be so fully as much as the war bonuses that were held to be in Glandzis v. Callinicos, supra, and in Lakos v. Saliaris, 4 Cir., 1940, 116 F.2d 440, cf. 29 U.S.C.A. § 207. Libelant's claims for overtime pay under Liberian law and for the penalty wages provided in 46 U.S.C.A. § 596 thus come within the foreign vessel proviso of § 597.

The question whether the district court may decline to exercise jurisdiction in such a case has provoked a difference of opinion between courts of appeals. In The Estrella, 3 Cir., 1938, 102 F.2d 736, certiorari denied Myklebust v. Meidell, 1939, 306 U.S. 658, 59 S.Ct. 775, 83 L.Ed. 1055, the Third Circuit held it may, Biggs, C. J., dissenting; in Lakos v. Saliaris, supra, the Fourth Circuit held it may not. We agree with the Fourth Circuit and with the dissenting opinion in the Third.[2]

 If the proviso in § 597 had said only that the section "shall apply to seamen on foreign vessels while in harbors of the United States," it could well be contended that the claim thereby created was subject to the usual right of the admiralty to dismiss a suit between foreigners on the ground of inconvenient forum, see The Belgenland, 1885, 114 U.S. 355, 363, 5 S.Ct. 860, 29 L.Ed. 152; Lynch v. Crowder, D.C.S.D.N.Y.1849, 15 Fed.Cas. page 1172, No. 8,637. However, Congress went further and directed that "the courts of the United States shall be open to such seamen for its en-

forcement." It was unnecessary to add this simply to give the federal courts jurisdiction which they might or might not choose to exercise. For it had been settled from the earliest days that the constitutional and statutory grant of power in "all cases of admiralty and maritime jurisdiction" covered controversies between foreign seamen and their foreign masters for wages. Moran v. Baudin, D.C.Pa.1788, 17 Fed.Cas. page 721, No. 9,785; Weiberg v. The St. Oloff, D.C. D.Pa.1790, 29 Fed.Cas. page 591, No. 17,-357; Thompson v. The Catharina, D.C. D.Pa.1795, 23 Fed.Cas. page 1028, No. 13,949; The Amalia, D.C.D.Me.1880, 3 F. 652. It is thus reasonable to conclude that when Congress added a direction that the courts of the United States "shall be open" for enforcement of the rights conferred upon "seamen on foreign vessels," it meant they should not only be but stay open.

This conclusion is fortified by examination of the reasons behind the insertion of the foreign vessel proviso. These reasons, hinted at in Mr. Justice Day's opinion in Strathearn S.S. Co. v. Dillon, supra, 252 U.S. at page 355, 40 S.Ct. at page 352, are impressively marshalled in the opinion that Mr. Justice Brandeis had prepared for possible delivery in that case, see Bickel, The Unpublished Opinions of Mr. Justice Brandeis, pp. 35, 47 ff., reprinted in 69 Harv.L.Rev. 1177, 1190 ff. Review of the legislative materials shows that the proviso was inserted for the benefit not so much of foreign as of American seamen. It was thought that to apply to foreign vessels touching at American ports some of the same requirements imposed upon our own would tend to "equalize the cost of operation" of American and foreign flag vessels and thereby discourage American shipowners from placing their vessels under foreign flags. See particularly H.R.Rep. 645, 62nd Cong., 2d Sess. (1912), p. 8; H.R.Rep. 852, 63rd Cong., 2d Sess. (1914), p. 19; and the remarks

---

**2.** This is the view taken by Professor Bickel, The Doctrine of Forum Non Conveniens as Applied in Federal Courts

in Matters of Admiralty, 35 Cornell L.Q. 12, 23–26 (1949).

# 574

of Senator Fletcher, 50 Cong.Rec. 5748–49 (1915). This purpose could be better attained by giving foreign seamen unobstructed and mandatory access to the federal courts rather than by leaving it to the discretion of each district judge to remit the seaman to a foreign consul, who could hardly be counted upon to apply the special remedies of §§ 596 and 597. See Judge Biggs' dissenting opinion in The Estrella, supra, 102 F.2d at page 738.

Respondent argues that even if this be so, the jurisdiction conferred by the foreign vessel proviso of § 597 is only upon the district court within whose territory the foreign vessel enters harbor, here the District Court for the Southern District of Texas. It is true that one purpose of §§ 596 and 597 was to prevent a seaman's being left destitute at and consequently a charge upon the harbor where he debarked, and true also that suits by foreign seamen under these sections have usually been brought at such ports. However, respondent's argument seems to involve transposing the phrase "in harbors of the United States" from the first clause of the proviso, which creates the right, to the second clause relating to the remedy. The natural reading is rather that a seaman on a foreign vessel obtains his right once the specified facts occur while the vessel is in a harbor of the United States, and that this right can be enforced in any court of the United States where jurisdiction over the vessel or her owner can be had. The decision in Transportes Maritimos Do Estado v. Almeido, 2 Cir., 1925, 5 F.2d 151, is not inconsistent with this view although some of the language is; for there the libelant whose wage claim was dismissed had not been discharged in any harbor of the United States.

We find no merit in other arguments advanced by respondent. It is immaterial that the libel does not allege demand for the overtime payment prior to suit; § 597 requires a prior demand for part payments but § 596 does not, although the absence of demand is relevant but not determinative on the issue whether the non-payment was "without sufficient cause," so that penalty wages would also be due. The receipt alleged to have been signed by libelant is not conclusive, for reasons explained in Mavromatis v. United Greek Shipowners Corp., supra, 179 F.2d at page 317. Finally, respondent claims that to require the payment of penalty wages would run counter to the rule in McCrea v. United States, 1935, 294 U.S. 23, 30, 55 S.Ct. 291, 294, 79 L.Ed. 735, that § 596 "confers no right to recover double wages where the delay in payment of wages due was not in some sense arbitrary, willful, or unreasonable." Although such an argument would have had force as to the claim in the original libel that the vessel was subject to liabilities unexpectedly created by application of Panamanian law, it is much less impressive when the unpaid wages represent overtime alleged to be due under a seemingly clear provision of the law of the flag; indeed, the desire for certainty on matters of this sort is one of the bases for the law of the flag rule. See Lauritzen v. Larsen, 1953, 345 U.S. 571, 585, 73 S.Ct. 921, 97 L.Ed. 1254. We hold only that the third cause of action in the proposed amended libel was not insufficient on its face; respondent will be free to develop facts bringing itself within the principle of McCrea.

The order of the District Court is reversed with instructions to grant leave to file the amended libel save for the first cause of action.