Antonio **CERDA**

v.

**ELETSON MARITIME CORPORATION**
**and Stylis Shipping Corporation.**

Civ. A. No. 79–509.

United States District Court,
E. D. Pennsylvania.

March 24, 1981.

Theodore Hauptman, Bernard Sacks, P. C., Philadelphia, Pa., for plaintiff.

John T. Biezup, Timothy J. Abeel, Palmer, Biezup & Henderson, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this case a Chilean seaman brings various claims against the Liberian corporations that own and manage the Greek ship on which he was employed. He seeks to recover damages for injuries he sustained in the course of his employment, maintenance and cure and damages for failure to pay the same, earned and unearned wages, double wage penalties, and attorney's fees. Marshalling numerous counter-arguments, the defendants have moved to dismiss the suit on the ground of *forum non conveniens.* Plaintiff contends that his effort to refute these arguments is substantially prejudiced by defendants' unwillingness to cooperate in discovery to the extent he desires, which they regard as objectionable, and he has moved to compel discovery under Federal Rule of Civil Procedure 37(a). These matters will be addressed after a brief statement of the facts.

### I

Antonio Cerda joined the M/T Stylis as a wiper on June 16, 1978 in Piraeus, Greece. His contract of employment provided for a monthly basic wage of 8,980 Greek drachmas supplemented by a 10% tanker allowance and a 14% Sunday labor allowance. This sum of 11,135 drachmas could be further supplemented by compensation for overtime labor at a rate of 41.50 drachmas per hour. In addition, the contract stated that Greek law would govern any dispute arising from it and that Greek courts would have jurisdiction over such disputes. Because the M/T Stylis is an ocean-going Greek flag vessel of a tonnage of more than 4,000 tons D.W., the terms and conditions of

plaintiff's employment on it were also governed by the Panhellenic Seamen's Federation Collective Agreement for Work at Sea. Chapter XVII of this Agreement states that "any claim or right arising out of the seamen's [sic] employment" is to be governed exclusively by Greek law and that Greek courts have exclusive jurisdiction over such claims or rights.

From June 16 to June 30, 1978 plaintiff worked as a wiper on the M/T Stylis. On July 1, 1978, he was promoted to the position of fireman, with a gross monthly rate of pay of 17,694 drachmas, exclusive of overtime. While employed in this capacity, plaintiff suffered a burn on the inside of his right ankle as a result of a furnace accident, the details of which are not pertinent here.

The accident occurred on or about July 13, 1978 when the Stylis was at sea approximately halfway between Egypt and Singapore. Plaintiff continued to work despite the burn. He received medical treatment for it in Singapore on August 7, in Balikpapan, Indonesia on August 24, and in Zamboanga Filagra in the Philippines on October 3, 1978. The doctor in Balikpapan recommended that the plaintiff rest for three days but he claims that when he requested the same, he was threatened with discharge and deduction of repatriation costs from his wages due. He continued to work until the end of November when he insisted on rest. Finally, on December 7, 1978, the plaintiff saw a doctor in San Francisco and was sent to a hospital by him.

At the hospital, plaintiff's injury was diagnosed as an ulcerated, infected third degree burn of the right ankle. He signed off the Stylis on the following day and underwent surgery consisting of a "z-plasty with rotation pedicle and full thickness skin graft abdomen to right ankle." He remained hospitalized until December 27, 1978.

The cost of plaintiff's medical treatment in San Francisco was $8,144.85, all of which was paid by the defendants. He received this treatment at the Overseas Medical Center and the Pacific Medical Center. There-

after he was lodged at the Sutter Hotel in San Francisco until January 26, 1979 at a cost to the defendants of $1,114.99. While there he continued to receive medical treatment.

Upon release from the hospital plaintiff was paid $1,180.00 (43,514 drachmas) in wages by an agent with whom the Captain of the Stylis had left the money. According to the plaintiff, this sum was insufficient in that it failed to compensate him for food, for the whole of December instead of only for the first nine days of that month, and for the difference between a wiper's wage and that of a fireman for the months of July, August, and September. He also claims that his drachmas should have been converted into dollars at a rate of 36 not 37 to the dollar. But "since I was not there, [the captain] tried to fool me."

In early, 1979, plaintiff's dissatisfaction with the defendants' conduct ripened into a decision to bring suit against them. On January 31, 1979, counsel for the plaintiff agreed not to attach the Stylis in return for a guarantee of payment by the United Kingdom Mutual Steam Ship Assurance Association (Bermuda), Ltd. of any judgment, decree, or settlement in the plaintiff's suit up to a sum of $50,000.00. On February 8, 1979 plaintiff brought this action under Federal Rule of Civil Procedure 9(h), the Jones Act, 46 U.S.C. § 688, the Seamen's Wage Statutes, 46 U.S.C. §§ 596–597, the general maritime law of this country, and all other alternatively applicable law. He was deposed in Philadelphia by defendants' counsel on the following day.

Thereafter, the plaintiff flew home to Chile, where he continues to reside now. Defendants paid for his flight from San Francisco to Chile via Philadelphia. Defendants have also paid for plaintiff's further medical needs in Chile, including surgery on his leg, and on November 1, 1979 they tendered to plaintiff's counsel a check for $1,000, the amount that plaintiff had stated the defendants owed him. Although these funds have been sent to the plaintiff because of his great need for money, they have not been accepted by him as a final

settlement of his claims. According to his counsel, the amount due is $2,189.79—$429.25 in earned wages, $1,364.54 in sick wages, and $396.00 in subsistence payments for the duration of the plaintiff's stay in this country.

These are the salient facts of the case. Turning to the legal arguments, defendants maintain that under *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), "the points of contact" between the shipboard accident and this country are insufficient to warrant the application of our law to it, and they have moved to dismiss the personal injury claim under the doctrine of *forum non conveniens, see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In the plaintiff's view this motion should not be granted because defendants' unwillingness to cooperate in discovery has prevented him from showing substantial "points of contact" between the accident and this country within the meaning of *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). Plaintiff also argues that as this Court has jurisdiction over his wage claims under 46 U.S.C. §§ 596, 597, it should, in the interest of justice and convenience, assume jurisdiction over his personal injury and other claims. In response, the defendants maintain that plaintiff's discovery demands are "overly broad, oppressive and unduly burdensome," and that his wage claims are unsupported by factual evidence and are without legal merit. Their alternative arguments as to the wage claims are that these claims were satisfied by the November, 1979 payment of $1,000.00 or should be dismissed under the doctrine of *forum non conveniens* because they are governed by Greek law.

Not all of these arguments need be addressed for this Court to decide that the defendants' motion to dismiss cannot be granted and that plaintiff's motion to compel discovery must be granted in part. The reasons for these dispositions are stated in the discussion that follows.

## II

Turning first to the plaintiff's wage claims, 46 U.S.C. § 596 states in pertinent part:

The master or owner of any vessel ... making foreign voyages [shall pay to every seaman his wages] within four days after the seaman has been discharged.... Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days pay for each and every day during which payment is delayed beyond the [stated] period[s], which sum shall be recoverable as wages in any claim before the court; ...

The statute applies to a foreign seaman discharged by a foreign vessel in a port of the United States. *The Fletero v. Arias*, 206 F.2d 267, 271 (4th Cir.), *cert. denied*, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 348 (1953). A foreign seaman alleging that he has not been paid as required by the statute need not bring suit in the district court within whose territory the discharge occurred but may enforce his right in any district court where jurisdiction over the vessel or her owner can be obtained. *Monteiro v. Sociedad Maritima San Nicolas, S.A.*, 280 F.2d 568, 574 (2d Cir.), *cert. denied*, 364 U.S. 915, 81 S.Ct. 272, 5 L.Ed.2d 228 (1960). A seaman's departure from a vessel for required medical treatment constitutes a discharge under the statute. *Grevas v. M/V Olympic Pegasus*, 557 F.2d 65 (4th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 515, 54 L.Ed.2d 456 (1977).

Although it was once disputed whether a district court was required to hear a foreign seaman's claim under this statute, compare *Lakos v. Saliaris*, 116 F.2d 440 (4th Cir. 1940), with *The Estrella*, 102 F.2d 736 (3d Cir. 1938), *cert. denied*, 306 U.S. 658, 59 S.Ct. 775, 83 L.Ed. 1055 (1939) (involving consular powers under a treaty), the "better and gradually prevailing view is that the jurisdiction so granted is mandatory." Bickel, *The Doctrine of Forum Non Conveniens as Applied in the Federal Courts in Matters of Admiralty*, 35 Cornell L.Q. 12, 23 (1949). *See Conte v. Flota Mercante del Estado*, 277 F.2d 664 (2d Cir.

1960); *Lascaratos v. S/T Olympic Flame*, 227 F.Supp. 161 (E.D.Pa.1964). Defendants' motion to dismiss plaintiff's § 596 wage claims will therefore be denied. However, his § 597 claim will be dismissed as he has not alleged that he made a prior demand as required by that section. *Monteiro v. Sociedad Maritima San Nicolas, S.A.*, 280 F.2d at 574.

### III

In *Lauritzen v. Larsen, supra*, the Court set out seven considerations relevant in deciding which law applies to a foreign seaman's personal injury claim: (1) the place of the wrongful act; (2) law of the ship's flag; (3) allegiance or domicile of the injured seaman; (4) allegiance of the shipowner; (5) place where the contract of employment was made; (6) inaccessibility of a foreign forum; and (7) the law of the forum. 345 U.S. at 583, 72 S.Ct. 928–32. In *Hellenic Lines v. Rhoditis, supra*, the Court added the shipowner's "base of operations" as a further consideration and noted that "there well may be others." 398 U.S. at 306, 90 S.Ct. 1734. Moreover, the Court clarified how the test should be employed in deciding a choice of law question in a particular case: "the facts or groups of facts which constitute contacts between the transaction involved in the case and the United States" should be ascertained and the court should "then decid[e] whether or not they are substantial." *Id.* at 309 n.4, 90 S.Ct. 1737 n.4, *quoting Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 441 (2d Cir. 1959). As "there is no occasion to consider and 'weigh' the contacts that do not exist, nor to ... balanc[e] ... facts that are present against ... facts that are absent," 263 F.2d at 441, a record that fails to disclose facts that might constitute substantial contacts between the transaction and the United States cannot be dispositive of the choice of law question even if it manifests a definite tendency in either direction.

But the defendants, citing *Chirinos de Alvarez v. Creole Petroleum Corp.*, 613 F.2d 1240 (3d Cir. 1980), and *Merren v. A/S Borgestad*, 519 F.2d 82 (5th Cir. 1975), maintain that the facts already adduced are sufficient to decide the choice of law issue in their favor. *Chirinos de Alvarez*, however, is simply inapposite as no matters of discovery were disputed in it while *Merren* was later distinguished by a case more squarely facing the issue presented here. *See Blanco v. Carigulf Lines*, 632 F.2d 656 (5th Cir. 1980). In *Merren* the court upheld the dismissal of a claim brought under the Jones Act despite a refusal by the defendant to respond to a number of the plaintiff's interrogatories. The trial judge had ordered the defendant to answer "only ... those interrogatories which had to do with the court's power to adjudicate under the Act," 519 F.2d at 83, and the defendant responded to the extent necessary for the court to decide whether it had that power. "Any additional discovery would have no relevance to the decision and would thus be mere superfluity." *Id.* But in *Blanco* the same court reversed the dismissal of a Jones Act claim where the unanswered interrogatories focused on "jurisdictional" matters, such as the allegiance and base of operations of the defendant shipowner. Because the district court had thus failed to "review all of the necessary factors upon which [the jurisdictional determination] must be based," its dismissal of the claim was "premature." 632 F.2d at 658.

Although referring to the issue as one of "jurisdiction" rather than choice of law, it is *Blanco* and not *Merren* that is persuasive here. There are in this case numerous facts as yet undisclosed that could combine to mandate a holding that the Jones Act applies to the plaintiff's personal injury claim under the *Lauritzen—Hellenic Lines—Chirinos de Alvarez* standard. For example, although "there is no ownership or interest ... by citizens or residents in [sic] the United States" in the defendant corporations, Affidavit of Evangelos J. Korialos, President of the Board of Directors of each defendant, these corporations may nonetheless be owned by other foreign corporations which in turn are owned by United States citizens or residents. Further, the voyages of the Stylis may all begin or end in this country, and the lion's share of her income be earned in transporting United States cargo to and from United States ports. *See*

*generally, Hellenic Lines v. Rhoditis*, 398 U.S. at 307–10, 90 S.Ct. 1733–34. Less obvious considerations could also prove important. *See, e. g., Fisher v. Agios Nicolaos V*, 628 F.2d 308, 317 (5th Cir. 1980) (date of vessel's acquisition by defendants relevant in determining its base of operations). In short, to marshal support for his argument that the law of this country applies to his personal injury claims, plaintiff is entitled to have "a cold objective look at the actual operational contacts that this ship and this owner have with the United States." *Hellenic Lines v. Rhoditis*, 398 U.S. at 310, 90 S.Ct. 1734–35.

Defendants must therefore answer plaintiff's supplemental interrogatories numbered 19, 20, 23, 25, 26, 28, 29, 30, 36, 37, 41, 42, 43, 46, 47, 49, 50, 76, and 77. These answers should be provided within ten (10) days. Defendants may then reinstate their motion to dismiss the personal injury claims.

Order in accordance with opinion.