Enrique CUBEIRO, Plaintiff,

v.

SUN SEAWAY ENTERPRISES, INC., et al, Defendants.

No. 82 Civ. 936–CSH.

United States District Court, S. D. New York.

June 1, 1982.

James Andres, New York City, for plaintiff.

Cichanowicz & Callan, New York City, for defendants; Victor S. Cichanowicz, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff Enrique Cubeiro brought this admiralty action against the M/V SUNLIGHT, Sun Seaway Enterprises, Inc., as that vessel's alleged owner, and three other vessels of alleged common ownership, to recover wages and the double wage penalty provided for by 46 U.S.C. § 596. The parties cross move for summary judgment.

The following facts are either undisputed or established by affidavits. The SUNLIGHT, an ocean-going vessel, flies the Panamanian flag and is owned by Sun Bulk Ltd., a Liberian corporation. Defendant Sun Seaway Enterprises, Inc. is a domestic corporation with its offices in New York City. It acts as agents for foreign steamship companies in the United States, including Sun Bulk, Ltd., the owner of the SUNLIGHT. Sun Seaway Enterprises does not own or operate vessels in its own name. The other vessels named in the caption of the suit are owned by other foreign corporations.

In December, 1981, Sun Seaway Enterprises hired plaintiff to serve as chief engineer on board the SUNLIGHT. The vessel was then lying at the port of Maracaibo, Venezuela. Plaintiff flew from New York to Maracaibo and joined the vessel's crew, remaining on board for 17 days. He was discharged on January 1, 1982, and left the vessel; it is not entirely clear from the motion papers whether the SUNLIGHT was still at Maracaibo, but it is common ground that plaintiff was discharged in a foreign port.

The complaint states two causes of action. The first is for 17 days' regular wages and the expense of traveling to Maracaibo, alleged in the total amount of $3,331.30. The second cause of action pleads a claim under 46 U.S.C. § 596, in an amount "in excess of $14,621.00," that being the calculation of statutory double wages allegedly owing to plaintiff from January 3, 1982 until the date when his wage claim was paid.

An affidavit submitted by John Mellos, President of Sun Seaway Enterprises, recites that on March 3, 1982 plaintiff was paid $3,418.00 in respect of his wages and expenses. While the check was dishonored for insufficient funds when first presented to the drawee bank, the Mellos affidavit recites that the check was redeposited and honored on March 16. This is not disputed in the plaintiff's motion papers, and it would therefore appear that the first cause of action has been satisfied. Accordingly I am concerned on these motions only with the second cause of action, alleging the statutory claim for double wages.[1]

46 U.S.C. § 596 is one of several statutory provisions originally enacted in the 19th century which regulate the wages of seamen. Section 597 is also pertinent to the case at bar. Section 596 requires the master or owner of any vessel to pay a seaman on vessels making foreign voyages his wages within 24 hours after the cargo has been discharged or four days after the seaman has been discharged, whichever first happens. It further provides that every master or owner who refuses or neglects to make such payment "without sufficient cause" shall pay the seaman a sum equal to two days' pay for each day during which payment is delayed, "which sum shall be recoverable as wages in any claim made before the court." Section 597 provides that "Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to

---

1. At the time plaintiff received this check for $3,418.00, he signed a document which defendant contends constitutes a release of any other claims, including that for statutory double wages. The plaintiff contends that, in the circumstances in which it was given, the release is not binding upon him. The release raises factual issues which would, in any event, preclude summary judgment for plaintiff; however, in view of the conclusion I reach concerning the applicability of 46 U.S.C. § 596 to this case, the question of the release need not be further considered.

which he belongs one-half part of the balance of his wages earned and remaining unpaid at the time when such demand is made at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended, and all stipulations in the contract to the contrary shall be void... And when the voyage is ended every such seaman shall be entitled to the remainder of the wages which shall be then due him, as provided in section 596 of this title." Section 597 adds this proviso: "That this section shall apply to seamen on foreign vessels while in harbors of the United States and the courts of the United States shall be open to such seamen for its enforcement."

These sections have been construed to extend the jurisdictional proviso of § 597 to a claim for penalty wages under § 596. See Judge Friendly's analysis in *Monteiro v. Sociedad Maritima San Nicolas, S. A.,* 280 F.2d 568, 572–73 (2d Cir.), *cert. denied,* 364 U.S. 915, 81 S.Ct. 272, 5 L.Ed.2d 228 (1960). Thus it is now well settled that a foreign seaman, sailing on board a foreign-flag vessel, may file a claim in a United States court to enforce a § 596 remedy if he was discharged from the vessel in a United States port. See the cases cited in *Monteiro, supra,* at 572–73 and also *Caribbean Federation Lines v. Dahl,* 315 F.2d 370 (5th Cir.), *cert. denied,* 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963), and *Cerda v. Eletson Maritime Corp.,* 515 F.Supp. 883, 886 (E.D. Pa.1981).

However, it is equally clear that for the statute to apply, the discharge must have taken place in a United States port. Judge Friendly, construing the jurisdictional proviso in § 597 in *Monteiro,* wrote at 574:

"The natural reading is rather that a seaman on a foreign vessel obtains his right once the specified facts occur while the vessel is in a harbor of the United States, and that this right can be enforced in any court of the United States where jurisdiction over the vessel or her owner can be had. The decision in *Transportes Maritimos Do Estado v. Almeido,* 2 Cir., 1925, 5 F.2d 151, is not inconsistent

with this view although some of the language is; for there the libelant whose wage claim was dismissed had not been discharged in any harbor of the United States."

A comparable analysis appears in *Mavromatis v. United Greek Shipowners Corp.,* 179 F.2d 310 (1st Cir. 1950), involving a claim asserted under 46 U.S.C. § 599, which prohibits certain advances to seamen. Section 599(e) provides that the section as a whole "shall apply as well to foreign vessels while in waters of the United States, as to vessels of the United States." The First Circuit said in *Mavromatis:*

"It is settled that § 599(a) applies to foreign vessels to the extent only that such prohibited advances were made in ports of the United States. *Sandberg v. McDonald,* 1918, 248 U.S. 185, 39 S.Ct. 84, 63 L.Ed. 200; *Jackson v. S. S. Archimedes,* 1928, 275 U.S. 463, 48 S.Ct. 164, 72 L.Ed. 374." 179 F.2d at 316.

These decisions, which limit the applicability of American statutes to foreign seamen serving on board foreign vessels to acts occurring within United States ports, reflect "the rule of international maritime law which holds that the internal economy and management of a vessel should normally be controlled by the law of the flag." *Lopes v. S. S. Ocean Daphne,* 337 F.2d 777, 780 (4th Cir. 1964). Furthermore, the applicability *vel non* of these particular statutes to foreign-flag vessels is not affected by the fact that beneficial ownership of the vessel may lie in American hands. In *Lopes,* the Fourth Circuit considered claims asserted under 46 U.S.C. §§ 564, 575 and 578 by a foreign seaman who shipped at Baltimore on board a Liberian-registered vessel which flew the Liberian flag. The vessel was owned and operated by a New York corporation. The statutory provisions in question regulated the articles signed by seamen when they joined the crew; the articles signed by plaintiff complied with Liberian law, but not with the American statute. The Fourth Circuit held:

"The significant question raised by this appeal is whether certain sections of the

Merchant Seamen's Act apply where a foreign seaman ships aboard a foreign flag vessel which is owned and operated by a U. S. corporation. We think the answer must be 'No', because it was not the intent of Congress that these statutes should apply to foreign flag vessels using foreign crews, whether or not they are owned and operated by American citizens." 337 F.2d at 777–78 (footnote omitted).

After reviewing the antecedents of the American seamen's statutes, the *Lopes* court continued:

"In this historical context, the dichotomy between U.S. and foreign vessels then before Congress did not involve the category of U.S. owned-foreign registered vessels. Thus the provisions contained in section 597 expressly making them applicable to seamen on 'foreign vessels' entering U.S. ports, i.e., foreign flag vessels which invariably were foreign owned, do not ipso facto indicate Congress' intention in the present situation, but it may indicate a general intent that the remainder of the Act should not impinge upon the rule of international maritime law which holds that the internal economy and management of a vessel should normally be controlled by the law of the flag." *Id.* at 779–80 (footnote omitted).

The Fourth Circuit in *Lopes* rested its conclusion in part upon the decision of the Supreme Court in *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), in which the National Labor Relations Board had asserted its jurisdiction over a representation election aboard a vessel registered under the laws of Honduras and flying the Honduran flag. The crew was foreign. The vessel was owned by a Honduran corporation which was a wholly-owned subsidiary of an American corporation, and was regularly engaged in commerce between foreign and United States ports. The court, holding that the NLRB had no jurisdiction in these circumstances, conceded the power of Congress to make laws affecting foreign flag vessels in American ports and waters, but held that it would not construe the National Labor Relations Act to so apply, in the absence of clearly expressed specific intent on Congress' part.

The *Lopes* decision, and the case upon which it relies, are pertinent to the case at bar because plaintiff suggests that the SUNLIGHT, although registered in Panama and flying the Panamanian flag, may be beneficially owned by United States interests (notwithstanding Liberian corporate ownership). At the very least, plaintiff asks for discovery addressing this issue. But the exercise would be pointless because, as *Lopes* shows, American beneficial ownership would be irrelevant even if established. Plaintiff must rely upon the jurisdictional proviso in § 597, which limits the applicability of these statutory provisions "to seamen on foreign vessels while in harbors of the United States"; and in *Monteiro, supra*, Judge Friendly construed that language as limiting § 596 rights, in respect of seamen on foreign vessels, to cases where "the specified facts occur while the vessel is in a harbor of the United States..." Hence, one cannot find in these statutes that express congressional intent to extend American statutes to discharge of a seaman from a foreign vessel in a foreign port; and, under *McCulloch*, as interpreted in *Lopes*, beneficial ownership of the vessel in the United States is irrelevant.

Plaintiff relies upon two district court cases, which do not alter the foregoing analysis. In *Ventiadis v. C. J. Thibodeaux & Co.*, 295 F.Supp. 135 (S.D.Tex.1968), the plaintiff, a Greek citizen, served on board a Panamanian-flag vessel, and was discharged in Trinidad. Beneficial ownership of the vessel in United States citizens was made to appear. The district court extended 46 U.S.C. § 596 to these circumstances, holding at 138:

"Section 596, Title 46, U.S.C., relating to penalty wages, is applicable. Section 596 applies to foreign seamen serving on foreign vessels. *Caribbean Federation Lines v. Dahl*, 315 F.2d 370 (5 CA), cert. denied, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62

(1963); *The Fletero v. Arias*, 206 F.2d 267 (4 CA), cert. denied, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398 (1953). The fact that plaintiff was not discharged in a United States port does not render the section inapplicable. Plaintiff signed on in an American port and the vessel made regular voyages to and from American ports. To limit Section 596 only to instances in which the seaman is discharged in an American port would be to unreasonably restrict its effect. In addition, since the beneficial ownership of the ship was in United States citizens, the suit is between foreigners only technically."

This is the only case cited by counsel or disclosed by the Court's research that reaches this result. For the reasons stated, I decline to follow *Ventiadis* as contrary to the weight of authority.[2]

Plaintiff also relies upon *Fuhr v. Newfoundland-St. Lawrence Shipping Ltd., Panama*, 24 F.R.D. 9 (S.D.N.Y.1959), a decision by Judge Murphy of this Court, in which a § 596 claim was entertained on behalf of a seaman discharged from a Panamanian-flag vessel in Bermuda. The defendant shipowner did not contest jurisdiction; Judge Murphy admitted to his "serious doubt on this score,"[3] but decided nonetheless to decide the merits "with the hope of avoiding another trial in the event we are in error on the question of jurisdiction." *Id.* at 10. In point of fact, his doubts were entirely well founded. The present defendant, in a case involving the discharge of a seaman from a foreign-flag vessel in a for-

eign port, challenges the applicability of §§ 596 and 597, including the jurisdictional proviso in the latter section. Because that challenge is well founded in authority, the complaint must be dismissed.

The Clerk of the Court is directed to enter an order dismissing the complaint for lack of subject matter jurisdiction, without prejudice and without costs.

It is So Ordered.

**2.** Plaintiff also relies on the two appellate cases cited in *Ventiadis: Caribbean Federation Lines v. Dahl*, 315 F.2d 370 (5th Cir.), cert. denied, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963), and *The Fletero v. Arias*, 206 F.2d 267 (4th Cir.), cert. denied, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398 (1953). Neither case is in point, since in each the foreign seaman was discharged from a foreign-flag vessel in a United States port.

**3.** Judge Murphy wrote at 24 F.R.D. 11: "As we read the statute and reported cases discussing jurisdiction it would seem that the court lacks jurisdiction for claims under §§ 596 and 597 unless the ship is in a United States harbor and, perhaps for venue purposes, within the district at the time suit was

started, or at least during its pendency. In *Transportes Maritimos Do Estado v. Almeido*, 2 Cir., 1925, 5 F.2d 151, 153, Judge Hough said:
'This is a wage claim—it can be nothing else for purposes of jurisdiction. As a suit upon a broken Portuguese contract instituted by one alien against another, it has no place on the docket of the District Court. But as a wage claim it belongs to a class of demands which can only be promoted by seamen on foreign vessels while their vessel is in a harbor of the United States.
'For this reason the judgment is reversed and the cause remanded, with directions to dismiss the complaint.'"