## THE MONTAPEDIA.*

*(District Court, E. D. Louisiana. November, 1882.)*

1. **MERCHANT SHIPPING ACT—REV. ST. §§ 4501-4512.**
    The statute of June 7, 1872, (17 St. at Large, p. 262; Rev. St. §§ 4501 to 4512,) does not apply to a British vessel.
2. **ADMIRALTY JURISDICTION.**
    In the absence of circumstances showing cruelty or great hardship the admiralty courts of the United States cannot be required or allow themselves to entertain jurisdiction of a case where subjects of a foreign government invoke their assistance against a merchant vessel of another foreign government.
    *The Carolina,* (decided April, 1876, *ante,* 424,) followed.

In Admiralty.

*O. B. Sansum* and *J. B. White,* for libelants.

*J. R. Beckwith* and *J. Walker Fearn,* for claimants.

BILLINGS, D. J. This is a suit instituted by subjects of the empire of China against a British vessel. They were shipped at a port within the United States, namely, at San Francisco, for a voyage which was to occupy three years, and were to be discharged at Hong Kong. The whole question is, does the statute of June 7, 1872, (17 St. 262; Rev. St. at various sections from section 4501–4512,) apply to a British vessel? The conclusion which I have reached is that it does not. The act of June 7, 1872, is, in the provisions which relate to the shipping of seamen, a literal copy of the "Merchant Shipping Act," enacted by the parliament of Great Britain in the year 1854.

In section 160 of the act of the parliament of Great Britain (17 & 18 Vict. c. 104; Digest of Statutes relating to Merchant Shipping, 102) it is enacted that British ships which engage seamen at any place out of her majesty's dominions shall enter into the engagement with the sanction of the British consular officers, and according to that act of parliament. In section 15 of the act of the congress of the United States (17 St. at Large, 265) it is enacted *totidem verbis* that merchant ships of the United States who engage seamen at any place out of the United States shall enter into the engagement with the sanction of the consular officers of the United States, and according to that act of congress. Such an adoption on the part of the United States, in the year 1872, of a statute of Great Britain passed in the year 1854—such a coincidence in the legislation of the two nations—furnishes a guide to the courts of each in the construction of these statutes equivalent to a treaty stipulation; for it cannot be supposed that our government would copy the stat-

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

ute of England, and thereby, through its legislation, assert the supremacy of its laws over the manner of the shipment of its seamen in places and under certain circumstances in England, when it was not willing to concede an ascendency to the laws of England in similar places and under similar circumstances within our own territory. These statutes, then, must be considered as a mutual concession that either nation, in shipping her seamen upon her merchant vessels, was to follow her own laws, even when the shipping was effected within the territory of the other; and it would follow that the act of 1872 could not include in its operation British ships.

The structure of the statute of 1872 brings me to the same conclusion. The title of the statute is "An act to authorize the appointment of shipping commissioners by the several circuit courts of the United States to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States, and for the further protection of seamen." The very title limits the action of the shipping commissioners to a superintendence of the shipment on ships belonging to the United States. Now, the only thing complained of here is that there was no such superintendence.

But, again, section 65 of the act of 1872, p. 277, (act 4612 of Rev. St.,) enacts that, within the meaning and for the purposes of that act, a "master" is "a person having command of," and a "seaman" is "a person employed on board of," "a ship belonging to a citizen of the United States."

I think, therefore, the internal structure of the statute also shows that it was intended to operate only upon the manner of shipping crews upon our own vessels.

The case presented is of subjects of a foreign government, invoking the jurisdiction of a court of the United States against a merchant vessel of another foreign government. Independently of the statute of 1872, the case is without any circumstances which would require or allow this court to entertain jurisdiction, (see the opinion rendered by this court *In re The Carolina,* in April, 1876, *ante,* 424,) and that statute does not include this cause.

The decree, therefore, will be that the libel be dismissed.