## THE VICTORIA.

District Court, S. D. New York.
Dec. 23, 1947.

William L. Standard, of New York City (Louis R. Harolds, of New York City, of counsel), for libelants.

Burlingham, Veeder, Clark & Hupper, of New York City (Eugene Underwood, of New York City, of counsel), for claimant.

COXE, District Judge.

These are exceptions by both parties to a report of a Commissioner in a suit for the recovery of seamen's wages and penalties under Section 596, Title 46, of the U. S. Code Annotated.

The suit is a companion suit to one brought by the same libelants and others for salvage services in connection with the salvaging in April 1942 of the Motor Ship Victoria, an Argentine vessel, after she had been torpedoed and abandoned while proceeding from South America to Edgewater, New Jersey. The libelants were, at the time of the disaster, members of the crew of the Victoria, and, upon returning to the vessel some little time after the disaster, assisted in bringing the vessel safely to New York, where she arrived on the evening of April 21, 1942.

The two suits were consolidated and tried tgoether in January 1945, and were decided in a single opinion in which it was held that the libelants were entitled to recover their proportionate shares of a salvage award of $19,500 made to the crew of the vessel, as well as to recover

their unpaid wages and penalties. Usatorre v. Compania Argentina Navegacion Mihanovich, Ltda., D.C., 64 F.Supp. 370, 373. With respect to the wage claims, the court in its opinion made the following findings:

"After the Victoria reached port (i.e., New York), the libelants remained aboard the ship as members of her crew. About May 7, 1942, they consented in writing to continue the voyage under the command of Captain Isequilla, who replaced Captain Salamone. This consent given after the voyage was broken up by abandonment of the ship did not constitute a continuance of their former contractual employment but an entirely new arrangement * * *."

"After libellants filed their libel for salvage, Captain Isequilla threatened that on their return to Argentina libellants would suffer the consequences of bringing suit for salvage in an American Court, that they would lose their wages, that their seamen's papers would be taken from them and that some of them would be put in jail. Though the respondent furnished the libellants with clothes and made some advances to some of them, it refused or neglected after demand to pay wages to others.

"In these circumstances the libellants were justified in leaving the ship without forfeiting their wages or being considered deserters * * *."

The next to the concluding paragraph of the opinion reads: "Since the record does not sufficiently establish the amount of wages and penalties to which each of the libellants is entitled, the court in the absence of a stipulation will, in accordance with the suggestions of the proctors, appoint a commissioner to determine the same."

Following this decision, the Court, on December 10, 1945, signed separate Findings and Conclusions, reading in part as follows:

Findings:

"12. That after the Victoria reached port the libelants remained aboard the ship and thereafter, on May 7th, 1942 they consented in writing to continue the voyage under the command of Captain Isequilla, who had replaced Captain Salamone, the original captain. This consent was given after the voyage was broken up by the abandonment of the ship and did not constitute a continuance of the crew's former contractual employment, but constituted an entirely new agreement."

"13. After the libelants filed their libel for salvage, Captain Isequilla threatened that on their return to Argentina the libelants would suffer the consequences of bringing suit for salvage in a foreign port, that they would lose their wages, that their seamen's papers would be taken from them and that some of them would be put in jail.

"14. Although the respondent furnished the libelants with clothes and made some advances to some of them, it refused or neglected after demand to pay wages to the others."

Conclusions:

"Fifth: I further find that those libelants from whom wages were withheld are entitled to recover the amount of the wages, together with penalties.

"Sixth: Since the record does not establish the amount of wages and penalties to which each of the libelants is entitled, and counsel for the respective parties having appeared before me and having been unable to agree upon the exact amount, I hereby order and direct that the matter be referred to Godfrey Updike, Esq., Commissioner, to ascertain and compute the amount of wages and penalties to which each of the libelants is entitled, and to report thereon to this Court with all convenient speed."

The Commissioner held that these findings and conclusions were conclusive upon him and refused to consider, as desired by the claimant, whether or not the penalty statute was applicable to the facts in the case. He, therefore, reported only the amounts of wages and penalties due to each libelant.

It was conceded that no wages were due during the salvage period, which ended on April 21st. It was also conceded that wages were due for the period from

May 7, the date when the new agreement to continue the voyage under the command of Captain Isequilla was made, to July 6, the date when the libelants left the ship. But the claimant contended that no wages were due for the intervening period during which the libelants remained aboard the ship. The Commissioner, therefore, has reported the amount of wages due each libelant, including this intervening period, and also the amount of wages due, excluding this period.

 The claimant has excepted to the allowance of any wages for this intervening period, and also to the refusal of the Commissioner to consider and determine whether or not the penalty statute is applicable. I agree with the Commissioner that he was precluded by the findings and conclusions of the court from considering this latter question. For the same reason, the court having found that the libelants were members of the crew during this period, they are entitled to wages for the period from April 22 to May 6.

The Commissioner has reported that the libelants are entitled to penalties for the period from July 10, 1942, four days after they left the ship, to December 15, 1942. The claimant has excepted to the allowance of any penalties, and also that the amounts allowed are excessive. The libelants, insisting that they acted with dispatch, have excepted on the ground that penalties should have been allowed, at least, until December 10, 1945, the date when the court signed its findings and conclusions.

It appears from the Commissioner's report that the wage libel was filed on July 8, 1942, two days after the libelants left the ship; that the libel for salvage was then pending; that claimant's challenge to the jurisdiction of the court was rejected on August 12; that its answer was seasonably filed on August 21 and the case placed on the calendar for trial; that on October 26, when as appears from the claimant's brief, the case was No. 21 on the trial calendar, the trial was adjourned by stipulation to December 10, and adjourned again on December 1, to January 11, 1943; that about December 15, 1942, the libelants moved to consolidate the salvage and wage cases, which resulted in a stipulation that the two cases be tried together; and that in March 1943, the claimant offered to sever the two cases and proceed to a seperate trial of the wage case, but the libelants declined to do so. Other adjournments followed, until both cases were finally tried in January, 1945.

 The Commissioner held that it would be a manifest injustice to impose penalties beyond December 15, 1942, to which I agree. I think, though, that it would also be unjust to impose penalties beyond the date when the wage case could have been tried. Preference in the trial of such cases is ordinarily granted in this District. The libelants, however, made no motion for a preference. Instead, they stipulated, on October 26, when the case was No. 21 on the trial calendar, to adjourn the trial to December 10. If they had not so stipulated, the case should have been reached for trial, at the latest, early in the November term. I think that it is fair to both parties to fix November 10, 1942, rather than December 15, as the date upon which the penalties should cease to run.

 Where diligence has not been practiced by the seamen, penalties may properly be limited to a date prior to that of the decree. In spite of the seeming rigidity of the statute, the court still has discretionary power to limit the penalties. Periods as short as ten and fifteen days have been held to be proper. Mystic S.S. Co. v. Stromland, 4 Cir., 20 F.2d 342, on rehearing 21 F.2d 607, certiorari denied 276 U.S. 618, 48 S.Ct. 213, 72 L.Ed. 734; The Chester, D.C., Md., 25 F.2d 908.

The exceptions of the libelants are overruled. The claimant's exceptions are also overruled, except as to the penalties, which are allowed only to November 10, 1942.

The compensation of the Commissioner will be fixed in the order to be entered on this opinion.