Nikolaos KTISTAKIS, Appellant,

v.

LIBERIAN S.S. STAR and National Shipping and Trading Corporation, and Star Steamship Corporation, Appellees.

No. 8566.

United States Court of Appeals Fourth Circuit.

Argued April 6, 1962.

Decided May 28, 1962.

Burt M. Morewitz, Newport News, Va., for appellant.

Walter B. Martin, Jr., Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, and SOPER and BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

Appeal by the Libellant, Ktistakis, from a decree of the District Court for the Eastern District of Virginia. The decree awarded maintenance and cure but dismissed the other causes with prejudice, expressly holding that the provisions of Title 46 U.S.C.A. § 564, which set up certain standards for Shipping Articles, did not apply to invalidate Articles signed by a foreign seaman with a foreign vessel at a port of the United States. The Court further held that the Articles in question were not invalid under the Liberian Law.

The Libellant, a Greek citizen holding Greek seaman's papers, joined the Liberian Steamship Niki (now the S/S Star) at Baltimore, Maryland, on December 2, 1952. The Articles read "from the Port of Baltimore, Md., to South America and such other port or places in any part of the world as the Master may direct and back to the final port of

discharge in the United States for indefinite". The vessel voyaged from Baltimore, Maryland, to Victoria, Brazil, to Rio de Janerio, to Baltimore, at which latter port it discharged a cargo on February 28, 1953. The vessel then sailed from Baltimore to Savannah, Georgia, where it was sold. On March 10, 1953, the Libellant was paid in accordance with the terms of his Articles at the rate of $110.00 per month.

Libellant's brief makes the contention that the vessel though of Liberian registry was controlled by American interests. The statement is wholly without foundation on the record before us; counsel's references to exhibits, evidence, and depositions do not even remotely support the statement. The libel alleges that National Shipping and Trading Corporation and Transworld Marine Transport Corp., both foreign corporations, were the owners and/or operators during the time of Libellant's employment. The respondent's pleadings show the ship to have been owned by Alianza Compania Armadora, S.A. There is no evidence in the record conflicting with these allegations. We, therefore, act upon the assumption that the vessel was foreign owned as well as of foreign registry during the period involved in this suit.

The Libellant contends that Sections 564, 575 and 578 of Title 46 U.S.C.A. apply. We think not. Section 564 provides that the master of every vessel bound from a port in the United States (with certain exceptions which are not pertinent here) must make an agreement in writing with each of his crewmen and specifies certain particulars which the agreement must set forth including, "the nature and, as far as practicable, the duration of the intended voyage or engagement, and the port or country at which the voyage is to terminate". Section 575 provides that if the Master shall carry out a seaman without signed Articles, he shall pay to such seaman the highest wages which shall have been given at such port within three months next before the time of such shipping. Section 578 provides that

shipments made contrary to any act of Congress shall be void, and a seaman so shipped may leave the service at any time and shall be entitled to recover the highest rate of wages of the port from which he was shipped.

Sections 564 and 578 of the United States Code Annotated are derived from Acts June 7, 1872, Chapter 322, §§ 12, 15; 17 Stat. 264, 265. Section 575 of the Code derives from Acts July 20, 1790, Chapter 29, § 1; 1 Stat. 131. These later became §§ 4511, 4523, and 4521 of the Revised Statutes of 1878.

An examination of the history and structure of this body of legislation makes it clear that the law was intended to apply to vessels belonging to citizens of the United States. The Montapedia, 14 F. 427 (D.C.La.1882). In that case the District Court dismissed a libel by Chinese subjects shipped at the port of San Francisco against a British vessel because the execution of Articles was not done under the supervision of U. S. Shipping Commissioners as then provided by the Act. The Court concluded: "Independently of the statute of 1872, the case is without any circumstances which would require or allow this court to entertain jurisdiction, (see the opinion rendered by this court In re The Carolina, in April, 1876, [D.C., 14 F.] ante 424,) and that statute does not include this cause".

This rationale was made more specific a year later in United States v. Minges, 16 F. 657 (S.C.Cir.Ct.1883). The court there construed Rev.Stat. § 4601. This section was part of the general scheme of legislation now encompassed in 46 U.S.C.A., Chapter 18, "Merchant Seamen". Section 4601 was repealed by Act of December 21, 1898, Chapter 28, § 25, 30 Stat. 761. Nevertheless, the line of reasoning applied in Minges to construe that section applies with equal force to other particular sections at that time making up the general legislative scheme on the subject of merchant seamen. It now is a valid basis for interpretation of those sections of Title 15 Rev.Stat. existing in 1883 which now are found in

Chapter 18, 46 U.S.C.A., if no intent to the contrary is found.

In Minges the Court said that each section in Title 53 Rev.Stat. must be "read in connection with and is limited by the words of section 4612 * * *." (At 657). Construing Section 4601 in the light of Section 4612, the Court found that generally speaking, Title 53 Rev. Stat. was not applicable to foreign vessels.

Rev.Stat. § 4612 is now found in § 713, 46 U.S.C.A. Its wording is unchanged. It provides,

"In the construction of title 53 of the Revised Statutes, every person having the command of any vessel *belonging to any citizen of the United States* shall be deemed to be the 'master' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board *the same* shall be deemed and taken to be a 'seaman' * * *." (Emphasis added).

These definitions show conclusively, we think, that Title 53 Rev.Stat. is intended to apply *only* to vessels "belonging to any citizen of the United States". Those in command of and those working on foreign owned vessels are not, by definition, within the terms of the Act. The effect of these definitions is that the Sections of Title 53 of Rev.Stat. (46 U. S.C.A., Chapter 18) apply only to masters and seamen on American-owned vessels. Therefore, Rev.Stat. § 4511, 17 Stat. 264 (46 U.S.C.A. § 564) requires only the "master" of an American owned vessel to sign Articles with each "seaman" thereon in accordance with the requirements there laid down. Likewise the penalty for shipping without Articles laid down in Rev.Stat. § 4521, 1 Stat. 131 (46 U.S.C.A. § 575) applies only to a master of an American owned vessel. Similarly only seamen on American owned ships are entitled to the highest wages of the port under Rev.Stat. § 4523, 17 Stat. 265 (46 U.S.C.A. § 578).

This is the basis of construction set out in Minges, supra, and it is as valid now as it was then. Accord: Grant v. United States, 58 F. 694 (9 Cir. 1893); The Elswick Tower, 241 F. 706 (D.C.Ga. 1917).

In The Elswick Tower, supra, the Court refused to apply the provisions of Section 564 to a foreign flag vessel. In that case foreign seamen had signed aboard a British vessel in New York. The Libellants sought to hold the Articles void because not signed before a U. S. Shipping Commissioner, in an effort to avoid the penalty for jumping ship en route. The Court rejected the contention, holding with the Montapedia case, supra. The Court also pointed out that the proviso in Section 597 of Title 46 which expressly made that section applicable to foreign ships in American ports and conferred jurisdiction on the Courts of the United States in such cases, was further indication that the other sections of the Act were not intended to apply to foreign seamen and vessels.

Thus the law is that the provisions of Title 53 Rev.Stat. §§ 4501–4612 (46 U. S.C.A., Chapter 18) as a general rule, apply only to seamen employed on board American-owned vessels. Only where Congress has specifically provided that this general rule of restriction shall not be applied in construing a particular section, can seamen on foreign-owned vessels successfully invoke the aid and protection of this legislation. Cf. Lauritzen v. Larsen, 345 U.S. 571, 577, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).

The Libellant's contention that Section 564, dealing with Shipping Articles, should apply to foreign seamen on foreign vessels because Section 599 dealing with advances and allotments and Section 597 dealing with payments at ports, and Section 596 dealing with penalties for failure to pay on time are so applied is without support in the cited cases. Not only that, but the application of the latter sections to foreign seamen is specifically provided in Sections 599 and 597, the provisions of which are so interrelated to Section 596 as to make it logical to hold the latter as also applying

to foreign seamen. Further, as pointed out in The Elswick Tower, supra, the fact that Congress found it necessary, in order to make Sections 597 and 599 apply to foreign vessels, to write into those sections express provisos to that effect, shows a clear Congressional intent that the Act should not generally apply to foreign vessels. In re Sonderborg, 47 F.2d 723 (4 Cir. 1931) does not support the Libellant, as no question arose therein concerning the validity of Articles.

The remaining points raised by the Libellant upon analysis are found to be dependent upon the Court's acceptance of the Libellant's contention that Section 564 applied to this situation. Absent that, there is nothing in this record or the findings of the Court below to upset the validity of the Articles. Such being true there was no improper withholding of wages within the provisions of 46 U.S.C.A. §§ 596–597. This being true, the decree of the Court below is

Affirmed.