John **KOUKORINIS**, Libelant,

v.

**Liberian S/T EURYPYLE, etc., et al.,**
Respondents.

No. 390.

United States District Court
E. D. Virginia,
Newport News Division.

Feb. 25, 1963.

Burt M. Morewitz, Newport News, Va., for libelant.

Vandeventer, Black, Meredith & Martin, Walter B. Martin, Jr., Norfolk, Va., for respondents.

WALTER E. HOFFMAN, Chief Judge.

This cause came on for trial on October 5, 1959, at which time the court received the evidence and stipulations of the parties and heard the arguments of proctors. Having reviewed the pleadings as filed herein and fully considered the evidence and stipulations and the statements, admissions and argument of proctors, the court doth now make the following:

### FINDINGS OF FACT

1. At all pertinent times the S/T EURYPYLE was an ocean going tanker, registered under the laws of the Republic of Liberia.

2. At all pertinent times the record owner of the EURYPYLE was respondent, West Atlantic Overseas Carriers, Ltd., and the general agent for the EURYPYLE was P. D. Marchessini & Co., Inc., 21 West Street, New York 6, New York. These are the only respondents before the court.

3. At all pertinent times respondent, West Atlantic Overseas Carriers, Ltd. was wholly owned, operated and controlled by American residents, citizens and corporations.

4. At all pertinent times the EURYPYLE was engaged in foreign commerce between the United States and other countries.

5. On February 1, 1956, Captain A. Thalassini became master of the EURYPYLE which was then at Savannah, Georgia.

6. On February 3, 1956, Captain A. Thalassini, on behalf of respondent, West Atlantic Overseas Carriers, Ltd., entered into an individual written contract with libelant, employing libelant for service aboard the EURYPYLE in the capacity of able seaman, at the monthly base rate of wages of £37, or $103.60, plus overtime at 3 shillings, or $.42 per hour for all work in excess of eight hours per day, said wages to commence at the time of libelant's reporting for duty to the master or chief officer aboard the ship, and to cease at the time of signing off Articles.

7. On February 6, 1956, at Savannah, Georgia, libelant signed purported Articles aboard the EURYPYLE.

8. On February 24, 1956, while the vessel was at sea, the master made an advance of $27.18 on the future earnings of libelant and said advance on future earnings was thereafter withheld from the earned wages of libelant after the same had actually been earned.

9. On June 16, 1956, at Paulsboro, New Jersey, libelant was discharged from the EURYPYLE and libelant signed off the purported Articles.

10. On June 16, 1956, at Paulsboro, New Jersey, when they discharged libelant, respondents paid libelant wages through June 15, 1956, at the base rate of $103.60 per month, plus $.42 per hour for overtime.

11. Libelant was paid no wages for June 16, 1956, the day he signed off the purported Articles.

12. On September 28, 1956, libelant instituted this suit for earned wages, waiting time under 46 U.S.C. §§ 596, 597, personal injury and maintenance and cure.

13. Libelant worked a total of 378 hours overtime aboard the EURYPYLE, for which he was paid at the rate agreed in his employment contract, of $.42 per hour.

14. During the service of libelant aboard the EURYPYLE there was no written contract or Articles signed by the libelant, stating the voyage or voyages or term or terms for which libelant was to be shipped.

15. During the employment of libelant aboard the EURYPYLE the vessel departed from a port in one country to a port in another country on the following occasions:

A. Departed Savannah, Georgia, February 21, 1956.

B. Departed San Nikolas, February 27, 1956.

C. Departed Houston, Texas, March 14, 1956.

D. Departed Cienfuegos, March 18, 1956.

E. Departed Houston, Texas, April 8, 1956.

F. Departed Havana, Cuba, April 12, 1956.

G. Departed Port Arthur, Texas, April 16, 1956.

H. Departed Matanzas, Cuba, April 20, 1956.

I. Departed Aruba, Dutch West Indies, April 24, 1956.

J. Departed Puerto La Cruz, Venezuela, May 5, 1956.

K. Departed Havana, Cuba, May 10, 1956.

L. Departed Aruba, Dutch West Indies, May 15, 1956.

M. Departed Paulsboro, New Jersey, May 21, 1956.

N. Departed Aruba, Dutch West Indies, May 27, 1956.

O. Departed New York, New York, June 3, 1956.

P. Departed Aruba, Dutch West Indies, June 9, 1956.

16. That at each of the ports mentioned in the preceding paragraph on each of the dates mentioned in the preceding paragraph, the highest rate of wages prevailing for able seamen on American-flagged vessels, whose owners had contracts with the National Maritime Union was $314.41 per month, plus overtime at $1.94 per hour.

17. Under the laws of the United States, if the same were applicable, the purported "articles" signed by libelant aboard the EURYPYLE were invalid and void and had no legal force or effect. Cf. United States v. Westwood, 266 F.2d 696 (4 Cir.).

18. During the service of libelant aboard the EURYPYLE the vessel did not have Articles that were valid under the laws of the United States. Cf. United States v. Westwood, 266 F.2d 696 (4 Cir.).

19. Libelant has failed to produce any evidence to support his claims under

the third and fourth causes of action of his libel for personal injury and maintenance and cure.

From the foregoing findings of fact the court makes the following:

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of this action and over the libelant and the respondents, P. D. Marchessini & Co., Inc., and West Atlantic Overseas Carriers, Ltd.

2. The substantive law to be applied to the wage claims and the construction of the vessel's Articles in this case are the laws of the Republic of Liberia and not the laws of the United States, except insofar as 46 U.S.C. §§ 596, 597 might apply to this case.

3. Libelant is entitled to one day's pay for June 16, 1956, in the sum of $3.45, however, the court finds that the libelant is not entitled to any penalties under 46 U.S.C. §§ 596, 597.

4. Libelant is not entitled to any wages other than the wages awarded to him in paragraph 3 above.

5. Libelant is not entitled to recover on his third or fourth causes of action.

## DISCUSSION

■ Proctors for the libelant and respondents have agreed upon the foregoing findings of fact and conclusions of law in view of the court's verbal statement that the substantive law to be applied to wage claims and the construction of the vessel's articles must be in accordance with the law of the vessel's flag even though the ship's flag is illusory. The exception to this rule is, of course, where the statutes of the United States are made applicable to foreign flag vessels as, for example, 46 U.S.C. §§ 596, 597.

This court is entirely familiar with the "flag of convenience" doctrine and has invoked the same in numerous cases involving personal injuries. Libelant insists that the same rule must be applied to wage claims, construction of void articles, etc. We disagree as these are matters pertaining solely to the internal management of the vessel.

To arrive at a contrary conclusion would result in a hybrid of laws incapable of interpretation and compliance. In many instances the owning corporation is substantially controlled and operated from several nations. The flag is that of one country; the place of incorporation is that of another country; the vessel may never visit either the country whose flag is on the vessel or the nation of incorporation. The ship may regularly visit and have substantial contacts with many other countries. For example, in Southern Cross Steamship Co. v. Firipis, 285 F.2d 651, 84 A.L.R.2d 895, cert. den. 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859, a citizen of Greece signed an employment contract in Greece for service aboard a vessel flying the flag of Honduras; he joined the vessel in Egypt; the owner was a corporation organized and existing under the laws of Liberia; the corporate stock was owned by Greek citizens, except for 20% of the stock which was owned by an American; the corporation maintained no office and employed no persons in Honduras; operating instructions were issued in part by Greek citizens and in part by the American stockholder; the vessel never visited Greece, Honduras or Liberia but did travel regularly between European ports and the United States. The Fourth Circuit upheld this court's finding that the flag was illusory and permitted a recovery under the Jones Act.

The precise question here presented was deemed to be unnecessary to answer in Ktistakis v. Liberian S.S. Star, 4 Cir., 304 F.2d 356, due to the absence of any proof that the vessel was controlled by American interests. Under the facts now presented, the issue must be met.

The various wage statutes and laws interpreting shipping articles are complex and varied. It is one thing to say that a vessel and its owner may be subjected to a cause of action for personal injuries or death under American law where the vessel and its owner maintain substantial American interests; it is

quite another question to hold that a vessel and its owner must adhere to all of the laws relating to wages and articles in every nation where any substantial contact is maintained. To do so would completely disrupt foreign commerce.

Libelant would have us disregard the admonition of Mr. Justice Jackson in the celebrated case of Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254, wherein the court quotes with approval from United States v. Flores, 289 U.S. 137, 158, 53 S.Ct. 580, 77 L.Ed. 1086, and Cunard Steamship Co. v. Mellon, 262 U.S. 100, 123, 43 S.Ct. 504, 67 L.Ed. 894, as follows (345 U.S. 585, 586, 73 S.Ct. 930, 97 L.Ed. 1254):

"And so by comity it came to be generally understood among civilized nations that all matters of discipline and all things done on board which affected only the vessel or those belonging to her, and did not involve the peace and dignity of the country, or the tranquillity of the port, should be left by the local government to be dealt with by the authorities of the nation to which the vessel belonged as the laws of that nation or the interests of its commerce should require * * *."

In Grivas v. Alianza Compania Armadora, S.A., 2 Cir., 276 F.2d 822, the seaman sought to invoke the law of Panama, which was the domicile of the vessel's owner, to wage claims allegedly due under the Panama Labor Code, and to claims for damages for alleged unjustified discharge, false arrest, abandonment, and compensation for extra work. The vessel was of Liberian registry. The court, applying the law of the flag, enters into some discussion of the illusory flag rule and finally says:

"For a prerequisite to the forum's choosing the law of a state other than that of the flag, at least when the law of the flag would not do so, must be a showing that such state would apply its own law if the question arose in its own courts, since otherwise the forum would not be applying the whole law of that state.

See McQuade v. Compania De Vapores San Antonio, S.A., D.C.S.D. N.Y.1955, 131 F.Supp. 365, 367. There is no such showing with respect to Panama in this case."

Factors of international law and commercial policy compel the holding that the law of the flag must be applied with respect to articles, wages, etc., unless otherwise governed by specific statutes.

On February 18, 1963, the Supreme Court handed down an opinion in McCulloch v. Sociedad National de Marineros de Honduras, 83 S.Ct. 671. It was there held that the National Labor Relations Board had no jurisdiction over maritime operations of foreign flagships employing alien seamen, even though the flag of the vessel be illusory and 'the operation is controlled by American interests. Acknowledging that the issue here presented is not identical, we cannot help but note that the unanimous opinion written by Mr. Justice Clark constitutes a warning to all courts to refrain from ruling in matters touching the internal order of the ship. Of particular interest is footnote 9 where it is said:

"Our conclusion does not foreclose such a procedure in different contexts, such as the Jones Act, 46 U.S.C. § 688, where the pervasive regulation of the internal order of a ship may not be present. As regards application of the Jones Act to maritime torts on foreign ships, however, the Court has stated that 'perhaps the most venerable and universal rule of maritime law relevant to our problem is that which gives cardinal importance to the law of the flag.' "

To now hold that foreign flag vessels must comply with all the laws of any nation with which the vessel may maintain "substantial contacts" in matters relating to the internal order or management of a vessel would lead to embarrassment in foreign affairs and would be utterly infeasible in actual practice.

Under the provisions of Chapter 10, § 310, of Chapter 8 of Title 22 (Maritime Law), Liberian Code of Laws of

1956 of the Republic of Liberia, adopted March 22, 1956, it is said:

> "§ 310. *Contract required.* Before the master of any Liberian vessel bound from a Liberian port to any foreign port or before the master of any vessel of five tons or more bound from a port in one county to a port in another county shall proceed on such a voyage, he shall make a contract (sometimes referred to as shipping articles) with every seaman or mariner on board his vessel, except with persons who are apprenticed to, or servants of, himself or the vessel's owner. The contract shall be written or printed and shall be subscribed by every seaman shipping on the vessel. It shall state the voyage or voyages or the term or terms for which each seaman shall be shipped and the rate of pay for each. At the foot of every such contract there shall be a written memorandum of the day and hour on which the subscribing seaman shall bind himself to report aboard to begin the voyage agreed upon."

The very next section, 311, states:

> "§ 311. *Penalty for departure without contract.* If any master shall carry out any seaman who has not made and signed a contract as required in section 310 above, the master shall pay to every such seaman, if he makes the voyage, the highest price or wage which has been paid for a similar voyage during the three months next preceding the date of illegal shipping at the port or ports whence such seaman shipped, or, if he does not make the voyage, than a proportionate part of such highest wage or price for whatever time he shall continue to do duty on board such vessel. In addition, the master shall pay a fine of twenty dollars for each such seaman, one-quarter to the use of the private prosecutor, and the remainder to the Republic of Liberia."

Admittedly, libelant did not sign any such contract or articles. In fact, the vessel has never visited Liberia. The statute applies (1) to any Liberian vessel *bound from a Liberian port* to a foreign port and (2) to any vessel of at least five tons *bound from a port in one county* to a port in another county. Without the benefit of a transcript the court is unable to recall whether the exhibit demonstrating that the Republic of Liberia is made up of several *counties* has been introduced. If not, it may be presented prior to the entry of a final decree. Initially the court thought that the word "county" may have been incorrect and intended to read "country" but as such is not the case the court is of the opinion that sections 310 and 311 are not applicable to this particular case. The same proctor has unsuccessfully urged that 46 U.S.C. § 564 applies to a Liberian flag vessel. Ktistakis v. Liberian S.S. Star, supra.

Proctors may present an appropriate decree in accordance with the foregoing findings of fact, conclusions of law and discussion as herein indicated.