**CARIBBEAN FEDERATION LINES,**
Claimant, Appellant,

v.

**Karl DAHL and Hjalmar Wiik, Appellees.**

No. 19927.

United States Court of Appeals
Fifth Circuit.

March 29, 1963.

Rehearing Denied May 22, 1963.

Harry H. Riddick, Hamilton, Denniston, Butler & Riddick, Mobile, Ala., Kreis & Kreis, New York City, for appellant.

Ross Diamond, Jr., Diamond, Engel & Lattof, Mobile, Ala., for appellees.

Before JONES and BELL, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge.

This is an appeal from a decree awarding Appellees Dahl and Wiik the sum of $13,299.74 and $10,654.70, respectively, against the SS AMIGO, her claimant and stipulator, for wages due, wages for the breach of contracts, penalty wages, subsistence, and cost of cure as to Dahl.[1]

Appellees signed one-year contracts of employment with the master of the Amigo, a Liberian flag-vessel, in Bergen, Norway, on November 15, 1958, under the terms of which Dahl was engaged as chief engineer of the Amigo, at wages of $400.00 a month, and Wiik as chief mate of the vessel at $300.00 a month, shortly increased to $325.00 a month. The engagement was for the Gulf Trade —West Indies and Overseas Trade, and could be terminated by either party upon giving fourteen days' notice after one year.

On December 4, 1958, Appellees joined the vessel in the Port of Pascagoula, Mississippi. The crew was not working. Some of the gear and equipment was inoperative, and the vessel was in a state of disrepair. Living conditions were poor. After repairs to her winches, her heavy cargo of logs from South America was discharged, and she departed, on December 13, for the Alabama Dry Dock at Mobile, Alabama. En route, her engines broke down and she was towed by a tug to her destination at Mobile where her entire crew, with the exception of the master and Appellees, was paid off and discharged.

Appellees remained aboard the vessel performing their duties until January 21, 1959, when they were advised by the master that the vessel was being laid up, and that they were being discharged. They were given letters of recommendation by the master, advising that their services had been satisfactory and that the reason for their separation from employment was that their vessel was being laid up.

Upon arriving at the office of the owner in New York City on January 22, 1959, Appellees were tendered checks for services performed to the date of their discharge plus $20.00 subsistence allowance to each. Each check bore the notation "Final settlement, wages and maintenance, a sign-off SS Amigo." The president of the owning corporation had airplane tickets for their return to Norway. The tender of wages and transportation was upon the condition that each officer would execute a written release which recited that the check covered "your full wages, plus $20.00 maintenance," and further provided:

"You fully agree that you are no longer under our employment and that you do not have, nor will you present any claim of any nature against the SS Amigo, its owners or agents. Your contract has been terminated in this manner by mutual agreement."

Appellees refused to accept payment under those conditions. They remained in New York City until April 7, 1959, awaiting repatriation. Through the efforts of the United States Immigration

and Naturalization Services, the owners or agents supplied them with airplane tickets to Norway. While awaiting repatriation, Appellees incurred subsistence expenses, and Dahl had to be hospitalized for pneumonia. Their repeated efforts to obtain employment during the contract period, except for 28 days for Dahl, were unsuccessful.

The libel was filed on February 6, 1959, and was assigned for first trial on February 26, 1960, and finally heard on February 3, 1961. The court found that by the exercise of due diligence by the Appellees the action could have been heard on the first trial date.

Appellant seeks a reversal on four principal contentions. It says that Appellees (1) are not within the class of seamen entitled to penalty wages under 46 U.S.C. § 596,[2] but if so, they (2) are entitled in addition to earned wages to a sum equal in amount to one month's wages as compensation upon their discharge, and no more, under 46 U.S.C. § 594 [3]; that the court erred in holding (3) that there was no bona fide offer of reemployment or, in the alternative, that Appellees had reasonable grounds for the rejection of such offer; and (4) that the penalty wages awarded are excessive, considering all the equities.

The record fails to reveal a reliance upon Section 594 in the lower court, and Appellees rightfully insist that Appellant cannot here urge the applicability of that section. Admiralty Rule 26, 28 U.S.C.; The Bencleuch, D.C.S.D. N.Y., 3 F.2d 824; Moran Towing & Transportation Co. v. Reading Co., D.C. S.D.N.Y., 158 F.Supp. 781. Furthermore, the section is limited to discharges "before the commencement of the voyage or before one month's wages are earned," and is inapplicable, since the discharges occurred after the commencement of the voyage to the Dry Dock at Mobile for repairs, and after a month's wages had been earned.

The SS Amigo is owned by Appellant, a Liberian corporation, 100 per cent of whose stock is, in turn, owned by Paul Slavin, a citizen of Argentina. Section 596 is applicable to foreign seamen serving on foreign vessels. Appellees, citizens of Norway, are within the protection of that section. The Fletero v. Arias, 4 Cir., 206 F.2d 267, cert. den. 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398, and The Sonderborg, 4 Cir., 47 F.2d 723, cert. den. 284 U.S. 618, 52 S.Ct. 7, 76 L.Ed. 527. The section is not inapplicable, as Appellant contends, because Appellees did not sign on before a Commissioner as authorized by Section 563.

2. "The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage. This section shall not apply to fishing or whaling vessels or yachts."

3. "Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

Title 46 U.S.C., Chapter 18, §§ 541–681 [4] of which Section 563 is a part, dealing with merchant seamen, including shipping commissioners, generally applies only to seamen employed on board American-owned vessels, except where Congress has specifically provided to the contrary. Ktistakis v. Liberian SS Star, 4 Cir., 304 F.2d 356.[5] Such limited applicability of Chapter 18 becomes apparent when considered with Section 713,[6] also a part thereof. Ktistakis, supra; The Montapedia, D.C.La., 14 F. 427; United States v. Minges, S.C.Cir.Ct., 16 F. 657; The Elswick Tower, D.C.Ga., 241 F. 706.

Appellant further contends that by virtue of Section 544 which renders inapplicable Section 596, where the vessel is engaged "in trade between the United States and the British North American possessions," that Appellees are not entitled to penalty wages, claiming that the Amigo was under a charter when it left Pascagoula to load railroad cross ties in Mobile for Seven Rivers, Canada.

Slavin testified that when the vessel discharged its cargo at Pascagoula, she was ordered to proceed to Mobile, "where *we were entering* into a contract to carry creosote railroad ties from Mobile, Alabama, to Seven Rivers, Canada."

When the vessel sailed from Pascagoula she was bound for the Alabama Dry Dock for repairs. She arrived at Mobile disabled. According to Slavin, the owners were unable to get an extension of time within which they "could commence to carry" the ties. There was no other employment immediately available for the vessel. The owners decided to lay her up. The crew, except the master and Appellees, was discharged. The vessel never began a voyage to Canada. Appellees never undertook such a

voyage, but remained aboard performing their duties until they were discharged on January 21, 1959, weeks prior to which the Canadian contract had been canceled. No cargo was loaded or was available for loading at that time, and none was ever loaded for ports in Canada.

Appellees' contracts were for services in the "Gulf Trade—West Indies and Overseas Trade" and they were bound to the vessel for a period of one year to go to any place in the world where the vessel might be ordered. A conclusion that the vessel was *engaged* in trade between the United States and the British North American possessions during the period of December 4, 1958, to January 21, 1959, when Appellees were aboard her, does not square with the facts or the realities of the situation and cannot be sustained.

The lower court correctly ruled that the tender of wages did not stop the penalty provisions of Section 596, since the tenders were conditioned upon the signing of a full release of all claims. A seaman is entitled to penalty wages if the wages concededly due are tendered only upon such a condition. Mandelin v. Kenneally, 4 Cir., 11 F.2d 344; The Fletero v. Arias, supra; Prindes v. The SS African Pilgrim, 4 Cir., 266 F.2d 125.

The findings of a trial court, sitting without a jury in admiralty, will not be reversed unless clearly erroneous. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Commerce Oil Corp. v. Dixie Carriers, Inc., 5 Cir., 252 F.2d 386.

The lower court found that there was not a sincere bona fide offer of reemployment and, if there was such, that the existing circumstances constituted rea-

---

4. Title 53, Revenue Stat., §§ 4501–4612.

5. The Court noted that Section 596 was so interrelated to Sections 597 and 599, which specifically cover foreign seamen, that it was logical to hold that the former also applied to foreign seamen.

6. Providing in part:
   "In the construction of title 53 of the Revised Statutes [Title 46 U.S.C., Chapter 18], every person having the command of any vessel *belonging to any citizen of the United States* shall be deemed to be the 'master' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity *on board the same* shall be deemed and taken to be a 'seaman' * * *." (Emphasis supplied.)

sonable grounds for the rejection of same. These findings, as others, rest on adequate support in the evidence and are not clearly erroneous.

Although the case was not heard until February 8, 1961, the court found that with the exercise of due diligence by Appellees, the action could have been heard on February 26, 1960, the date the action was assigned its first trial date. Penalty wages were computed to that date.[7] The court, feeling that "the equities of the matter dictated some modification," entered judgment for each for $2,000.00 less than the computation.

 The time for which the penalty provision runs rests within the sound discretion of the court and depends upon the equities of the case. Forster v. Oro Navigation Co. [See Footnote 7 below.]; Mystic S.S. Co. v. Stromland, 4 Cir., 20 F.2d 342, cert. den. 276 U.S. 618, 48 S.Ct. 213, 72 L.Ed. 734. We find no abuse of discretion in the award of penalty wages. The award was in keeping with all of the equities, and the judgment is

Affirmed.

---

7. The Victoria, D.C.S.D.N.Y., 76 F.Supp. 54; reversed on other grounds, Usatorre v. The Victoria, 2 Cir., 172 F.2d 434;

Forster v. Oro Navigation Co., D.C.S.D. N.Y., 128 F.Supp. 113, aff'd 2 Cir., 228 F.2d 819.